## WERNER v BIEDERMAN

Ohio Appeals, 1st Dist, Hamilton Co.

No. 5769. Decided May 13, 1940.

Ginocchio & Ginocchio, Cincinnati, and Carl G. Werner, Cincinnati, for appellee.

Gutting & Kearns, Cincinnati, for appellant.

**OPINION**

By MATTHEWS, J.

This is an action to recover damages on account of an alleged breach of a written contract, of which the following is a copy:

"The undersigned hereby employ Carl G. Werner as their attorney to represent and assist them in their efforts to procure from certain persons whose names appear below, their signatures to the agreement a copy of which is hereto attached.

In consideration of said efforts of said attorney to procure such signatures, the undersigned agree to pay said attorney the sum of Two Hundred Dollars ($200.00) retainer at once, and the further sum of One Thousand Dollars ($1000) if, as and when all of said persons named below have signed said attached agreement.

The undersigned further agree to pay such amounts and to execute such agreements as may be necessary and expedient legally to induce said persons to sign such attached agreement.

The payment of said retainer and said attorney fees, and of amounts agreed to be paid by the undersigned, shall be prorated among the undersigned in proportion to the amounts which they respectively have involved in the Investor's Protective Service, Inc., and Lindsay & Co., but it is understood that said attorney may hold each or any of the undersigned for the full amount of his fees as above set forth."

This contract is dated August 17th, 1934. On September 17, 1934, the plaintiff reported the progress he had made. This report shows that he had induced three of the persons to sign the agreement without qualification, one to sign on condition that the defendant and his four associates protect her against liability, three had agreed to sign upon payment of certain amounts, one upon payment of a certain amount, and the signing of an indemnity against liability, one upon delivery of certain stock and an indemnity agreement, and that he was negotiating with three, but had reached no agreement with them.

On September 21st, 1934, the defendant and his associates wrote the plaintiff as follows:

"As you know, the law firm of Maxwell & Ramsey and Attorney H. H. Sundermann have been employed by the Investors Protective Service, Inc.. to take full charge of legal matters affecting their business.

To our full knowledge and belief, the State of Ohio demands 100% of the clients' signatures, to permit voluntary liquidation. On August 17, 1934, Mr. Sundermann being away from the city, a committee was formed to work for the best interests of all the clients, and we employed you to secure all the signatures of those persons who had not signed a certain agreement for voluntary liquidation.

Now, inasmuch as we have been unable to complete the work, and our committee is knowingly hindering the progress of counsel employed by Investors Protective Service, Inc., and whereas threats of Receivership are being made almost daily, it becomes necessary for our committee to disband and turn the work over to the counsel employed by Investors Protective Service, Inc. It is also necessary for us to ask you to refrain from making any further efforts as requested by the Employment Contract with you."

Now it is conceded that the plaintiff did not procure the actual signatures to all of the agreement. It is also conceded that he had not procured the consent of all of them to sign the agreement.

The plaintiff alleged that the defendant and his associates failed to make the payments and sign the guaranties, and perform the other conditions stipulated by the five whom the plaintiff had induced to agree to sign upon performance of those conditions precedent, and as to the others who had not even conditionally agreed to sign, that the defendant "with the intent to prevent the plaintiff from obtaining such consents, interfered with the plaintiff's negotiations" with certain of the persons "by falsely representing that the plaintiff had been discharged" by the defendant and his associates and "by urging them to pay no atten-

tion to the plaintiff", and that the defendant had caused his associates to become dissatisfied with the plaintiff by falsely representing that he was neglecting their interests so as to induce them to discharge the plaintiff.

The effort of the plaintiff at the trial was to show that he had performed by assisting in every reasonable way, and that the defendant prevented plaintiff from actually securing the signatures.

From the plaintiff's report of September 17th, it is manifest that if the defendant had prior thereto allowed the plaintiff to continue in the belief that he was still representing him and his associates and at the same time nullify, his efforts by communicating false information as to his authority to those with whom he was negotiating, that his efforts at sabotage had failed. The only complaint in that report related to the failure of the defendant and his associates to perform the conditions imposed by those whom the plaintiff had induced to agree to sign. And it is clear from the evidence that the defendant and his associates failed to perform the conditions negotiated by plaintiff with those who had agreed to sign, and that the defendant and his associates concluded to dispense with the plaintiff's services without paying anything to him other than the retainer fee of $200.00, and to continue the effort to secure the signatures in other ways and through other attorneys, and it is equally clear that the conclusion of the defendant to dispense with plaintiff's services was not based on any default or failure of the plaintiff to perform the services required of him by his contract. Under such circumstances, has the plaintiff a cause of action against the defendant?

(1) It will be observed that by the terms of the contract the defendant did not agree to perform any and all terms agreed upon between the plaintiff and those with whom he was to negotiate. Nor did the plaintiff agree to perform all the services required to secure the signatures. The language of the contract is, that the plaintiff would

assist in securing the signatures to the desired agreement and that they would pay "such amounts and execute such agreements as may be necessary and expedient."

From the standpoint of the parties, the only thing to be accomplished was the saving that would result from a voluntary liquidation of the business of Lindsay & Co., as contrasted with a judicial or administrative liquidation. The meaning of the terms used must be determined in the light of that object.

Webster's primary definition of "expedient", when used as an adjective is "Apt and suitable to the end in view; furthering, or adapted to further what is purposed; practical and efficient; as, an expedient change of policy; an expedient solution of a difficulty; hence, advantageous."

Had the defendant and his associates been willing to concede any and all terms exacted by those whose signatures they desired, it would not have been necessary to enlist the assistance of any one. The difficulty arose because the defendant and his associates had not been able to induce the signatures on satisfactory terms, and that is the reason that the plaintiff's assistance was sought. It is manifest that the terms of settlement were to be satisfactory to the defendant and his associates, who were to furnish the funds and supply the guaranties. The conduct of the parties shows that this was understood by the plaintiff.

But this does not mean that the defendant could induce the plaintiff to perform service in negotiating agreements that were in fact satisfactory to him and his associates. and then reject the agreement on the pretense that they were not satisfactory, and thereby deprive the plaintiff of the stipulated compensation which he had in fact earned. There was implied as a term of the contract that the defendant would act in good faith and,

if the agreements negotiated by the plaintiff were in fact satisfactory. he would proceed in good faith to do the things required to secure the desired signatures.

In a trust deed it was provided that vacancies in the trusteeship could be declared "for such reasons as to them may seem expedient." Construing this language the Supreme Court of Massachusetts in Eustace v Dickey, 240 Mass., 55, at 83, said:

"That is a broad phrase. 'Expedient' is a word of large import. It comprehends whatever is suitable and appropriate in reason for the accomplishment of the specified object. In this connection it includes whatever may rationally be thought to conduce to the welfare of the trust. It means that the genuine judgment of the named church authorities honestly exercised is to prevail. The discretion of those possessing the power of removal, when applied in good faith, is not subject to reexamination in respect of its wisdom."

(2) The plaintiff's right to compensation additional to his retainer existed only "if, as and when all of said persons" signed the designated agreement. Now that condition had not been performed when plaintiff was notified to cease his efforts. But, there also is implied in the agreement ██ that the promisor would not prevent the performance of the condition. The plaintiff's unjustified discharge relieved the plaintiff of the duty of further effort.

In Restatement of the Law of Contracts, the rule is set forth in section 295, that:

"If a promisor prevents or hinders the occurrence of a condition, or the performance of a return promise, and the condition would have occurred or the performance of the return promise been rendered except for such prevention or hindrance, the condition is ex-

cused, and the actual or threatened non-performance of the return promise does not discharge the promisor's duty, unless

(a) the prevention or hindrance by the promisor is caused or justified by the conduct or pecuniary circumstances of the other party; or (b) the terms of the contract are such that the risk of such prevention or hindrance as occurs is assumed by the other party."

As applied to the facts of this case, we conclude that, the defendant and his associates performing their obligations, the plaintiff assumed the risk of the negotiation of such an agreement with those whose signatures were desired that the defendant and his associates would accept in the belief that thereby a voluntary liquidation of the business of Lindsay & Co. would take place resulting to their pecuniary advantage. If the defendant rejected the negotiated terms in good faith, believing they were not to his advantage, and no agreement was subsequently made, the condition upon which his compensation depended would not have come to pass. If the terms were in fact satisfactory, but the defendant pretended dissatisfaction, and refused in bad faith to comply with them, the defendant thereby without just cause prevented the plaintiff from performing the condition, such interference would violate an implied term of the contract and would obviate the necessity of performance by the plaintiff of the letter of the condition. Or if subsequent terms were negotiated that were accepted and the condition was performed, the plaintiff would be entitled to compensation.

(3) To reach a conclusion, it is also necessary to determine the duration of this contract of service. It contains no express limitation as to time. The plaintiff was employed to represent and assist the defendant and his associates in a certain task in which they engaged—the securing of signatures—in order that that task might be brought to a satisfactory conclusion. Under such circumstances, we believe the employ-

ment was more than at will, that it was to endure so long as the defendant pursued the object of the contract and the plaintiff performed the service contemplated by his employment.

In **9 O. Jur. 330,** it is stated that: "It has been held that a contract to employ one so long as the employer is engaged in the business in which he is at the time of employment is not too indefinite for enforcement."

In 12 Am. Jur. 559 and 560, it is said:

"Although the decisions on the subject are not harmonious, it may be said that contracts are not necessarily unenforceable simply because the precise time that the service is to continue is not specified, at least where the duration of the employment can be limited by construction to the time that the employer is engaged in the particular business and has work that the employee can and is willing to do and is able to do satisfactorily."

It should be observed that the plaintiff did not guarantee that he could or would secure all the signatures. The parties did not contemplate that he would do all the work. He was to assist them in every reasonable way and that was the extent of his duty. If, through his efforts and that of the defendant his associates, and any other person whose aid was invoked, the signatures have been obtained, then the condition has been performed and the plaintiff is entitled to his compensation.

Therefore, the reasons stated by the defendant, and his associates, in their letter of September 21st were insufficient as a justification for refusal to pay the plaintiff in the event they continued to endeavor to secure the signatures either personally or through other agents and attorneys as it is admitted they did, until all the signatures were obtained.

All the signatures having been obtained and the evidence showing without contradiction that the plaintiff did all he was called upon to do in assist-

ing, he was clearly entitled to the compensation stipulated in the contract.

We find no prejudical error in the record.

For these reasons, the judgment is affirmed.

HAMILTON, PJ. & ROSS, J., concur.