WARREN ET AL., APPELLEES, *v.* PERCY WILSON MORTGAGE & FINANCE CORP. ET AL., APPELLANTS; NATIONAL HOMES ACCEPTANCE CORP.

(Nos. C-830106 and -830125—Decided February 15, 1984.)

APPEALS: Court of Appeals for Hamilton County.

*Messrs. Weber & Nurre* and *Mr. Mark F. Weber,* for appellees.

*Messrs. French, Marks, Short, Weiner & Valleau,* and *Mr. Charles J. Davis,* for appellant Percy Wilson Mortgage & Finance Corp.

*Messrs. Rendigs, Fry, Kiely & Dennis* and *Mr. Frederick Brockmeier IV,* for appellant Northwestern National Life Ins. Co.

BLACK, J. The trial court granted plaintiffs' motion for summary judgment on the issue of liability only,

against defendants-appellants Percy Wilson Mortgage & Finance Corp. ("Wilson") and Northwestern National Life Insurance Co. ("Northwestern").[1] The court did not favor us by stating its reasons on the record, and we must assume that the court may have held Wilson and Northwestern liable on any one or more of the four claims set forth in the amended complaint. Basically, plaintiffs asserted that Wilson and Northwestern were liable for damages because they misled the plaintiffs about certain insurance on the life of Charles H. Warren, Jr. The four causes of action were: conspiracy to defraud, conduct intentionally defrauding, breach of contract, and breach of fiduciary duty. At the hearing on appeal, counsel argued principally the claim based on breach of fiduciary duty. We will discuss that claim first, but we will also take up the other claims. Briefly, we find the trial court erred because, on the record before us, plaintiffs were not entitled to summary judgment on any theory.[2]

The documentary evidence presented to the trial court is sparse but sufficient to disclose the following information, which is all the trial court had before it. In 1962, plaintiffs (meaning Miriam Warren and her late husband) purchased a residence, securing the deferred purchase price by a note and mortgage to Eastern States Mortgage Company. The note and mortgage were promptly assigned to the Hamburg Savings Bank of Brooklyn ("Hamburg Bank"). Plaintiffs made their monthly payments to that bank until August 1971, when the bank contracted with Wilson to service many of its mortgage loans, including the Warren loan; the Hamburg Bank reserved to itself the right to terminate the servicing contract in its discretion on short notice. The plaintiffs were advised about the change in servicing of their mortgage but not about the unilateral right to terminate. Thereafter, they made their monthly payments by mail to Wilson at its principal office in Chicago. Early in 1975, Wilson mailed, with plaintiffs' routine monthly statement, a form letter and printed brochure offering a "mortgage protection plan" in the form of Northwestern's term life insurance in the initial amount of the mortgage balance, with the monthly premium to be added to the routine mortgage payments. The contents of that letter and brochure are crucial to the question whether Wilson or Northwestern had a duty to disclose the fact that the insurance would be cancelled if and when the Hamburg Bank terminated Wilson's servicing contract.

Plaintiffs emphasize the following language in the form letter: "WILL YOUR FAMILY INHERIT A HOME OR A MORTGAGE," "LEAVE A DEED — NOT A DEBT," and "Here's your passport to security." Plaintiffs also point to Wilson's recommendation to its mortgagors that they buy this insurance, and to the statement in the

---

[1] The record contains two motions for summary judgment made by plaintiffs (as well as motions made by all defendants). One of plaintiffs' motions simply asks for judgment, presumably against all defendants; the other asks for judgment against Northwestern only. The judgment as granted was against both Northwestern and Wilson and was limited to the issue of liability. The judgment includes the trial court's determination of no just reason for delay. Civ. R. 54(B).

[2] Northwestern's single assignment of error is that the court erred in granting plaintiffs' motion for summary judgment, and it has merit. Wilson's single assignment of error contains two claims: that the court erred in granting plaintiffs' motion for summary judgment, and also in denying Wilson's motion for summary judgment. The first claim has merit, but the second claim has no merit because the trial court did not rule on Wilson's motion for summary judgment.

brochure that the insurance "assures your family the comfort of their home without disturbing [your] savings and regular life insurance program."

Wilson and Northwestern claim the brochure adequately disclosed the possibility of early termination, by reason of the following question and answer, one of six sets of questions and answers displayed in a "box" in the brochure:

"Q. How long will this insurance protection continue?

"A. As long as we service your loan — protection will continue until (1) Your mortgage indebtedness has been repaid, (2) You sell your home, (3) You reach age 70, (4) Your mortgage is in default, whichever may occur first."

While the full contractual arrangements between Northwestern and Wilson are not in the record, documents are there that establish the acceptance by Northwestern of full responsibility for the contents of the brochure, and the agreement by Northwestern to pay Wilson compensation for informing Northwestern about its mortgagors, collecting premiums, servicing claims and other services. Wilson was an agent for Northwestern as well as an agent for the Hamburg Bank. It is also uncontroverted that the only communications about purchasing insurance occurred by mail between plaintiffs and Wilson. Plaintiffs knew they were purchasing "declining insurance"; that is, insurance for a term equal to the number of remaining years on their loan, decreasing in amount year by year.

Mr. Warren applied for this insurance, and his application was accepted for $8,500. His policy became ef-

fective February 5, 1975, and plaintiffs began making premium payments at the rate of $8.33 per month.

Less than two years later, on January 6, 1977, the Hamburg Bank exercised its unilateral right to terminate the service contract with Wilson. The effective date was January 20, 1977, when Wilson was ordered to deliver all documents to National Homes Acceptance Corp.,[3] the new organization chosen by the Hamburg Bank to service all its mortgage loans. On January 20, 1977, Wilson mailed to all Hamburg Bank mortgagors on its lists a written notice of the change in servicing agents, a copy of which notice was received by the Warrens on January 23, 1977. This letter also told them that the decreasing term life insurance was cancelled.

On January 19, 1977, Mrs. Warren had informed Wilson by a long-distance telephone call that her husband had terminal cancer. She had just come home from visiting her husband at the hospital and had found a delinquency notice in the mail. Thinking this meant an immediate foreclosure, she called Wilson and in the conversation about clearing the delinquency told Wilson about the terminal illness.[4]

It is obvious that Wilson did not know of Mr. Warren's terminal illness before the Hamburg Bank unilaterally notified it of the servicing termination. Northwestern states it was never advised of the terminal illness.

Mr. Warren died of cancer on April 10, 1978, without obtaining insurance to replace the cancelled Northwestern policy. Northwestern refused to pay Mrs. Warren's demand for insurance proceeds from the policy bought in 1975, and she brought this suit.

---

[3] National Homes Acceptance Corp. was dismissed as a defendant when the trial court granted its motion for summary judgment. That order has not been appealed.

[4] Mrs. Warren conceded in her deposition

that, after she received the January 20, 1977 letter from Wilson, she did not pay the insurance premium with the next monthly payment, presumably sent to National Homes Acceptance Corp. This fact is not referred to by appellants or appellees.

In support of the judgment below, the plaintiffs claim that Wilson and Northwestern owed them a fiduciary duty of fair disclosure that their insurance would terminate with the termination of the Wilson servicing contract, and that this duty was not fulfilled. *Stone* v. *Davis* (1981), 66 Ohio St. 2d 74 [20 O.O.3d 64], certiorari denied *sub. nom. Cardinal Fed. S. & L. Assn.* v. *Davis* (1981), 454 U.S. 1081, held that a fiduciary duty of fair disclosure was created when a young married couple were guided by a savings and loan association through their first encounter with a complex mortgage loan process, and the association "broached" the subject of mortgage insurance by having them fill out a Federal Reserve Board Regulation Z disclosure form containing the question whether the young couple wanted mortgage insurance. The young people had answered that question in the affirmative, but the association did not advise them how to procure the insurance by direct application to an independent insurance company. The husband was killed in a motorcycle accident before the mortgage was fully paid. The association was held liable to the young widow for her loss of the mortgage insurance proceeds. We do not read *Stone* as holding that the mere "broaching" of the subject of mortgage insurance by the lender will, by itself and without more, create that special relationship of trust and confidence known as a fiduciary relationship out of what is otherwise a routine business relationship. As illustrated by *Umbaugh Pole Bldg. Co., Inc.* v. *Scott* (1979), 58 Ohio St. 2d 282 [12 O.O.3d 279], the mere giving of advice does not convert a business relationship (debtor and creditor) into a fiduciary relationship, which generally is created "* * * only when both parties understand that a special trust or confidence has been reposed." *Id.* at paragraph one of the syllabus.

We find nothing in the circumstances as disclosed by the record that changed the relationship between the plaintiffs and Wilson from the standard one between mortgagor and servicing agent, or between insured and insurance agent, into a fiduciary relationship. Certainly there was no mutual understanding that plaintiffs reposed a special confidence in Wilson or Northwestern, and we find no circumstances that would impose fiduciary duties as a matter of law. The plaintiffs did not personally seek the advice of Wilson and then rely on it; they merely accepted the opportunity to purchase life insurance covering their mortgage balance. The phrases in the form and letter that plaintiffs point to cannot, from the record before us, be characterized as anything but "sales puffing." *Tibbs* v. *Natl. Homes Constr. Corp.* (1977), 52 Ohio App. 2d 281, 288-289 [6 O.O.3d 300]; *Wilchins* v. *Pool* (1971), 29 Ohio App. 2d 223, 225 [58 O.O.2d 374]. They do not, standing alone, create a fiduciary duty as a matter of law. Without reaching the question whether other statements in the brochure disclosed the possibility of cancellation of the term insurance by termination of Wilson's servicing contract, we hold that the documentary evidence in the record was not sufficient to create a fiduciary relationship as a matter of law, and that the summary judgment cannot be sustained on this theory.

The plaintiffs claim that Wilson and Northwestern conspired to defraud them and also "engaged in a course of deliberate, intentional and fraudulent conduct calculated to avoid payment" of the insurance proceeds for the anticipated death. The documentary evidence in the record fails to establish as a matter of law the intent to defraud that is absolutely essential in these two causes of action. Summary judgment cannot be sustained on either of these theories.

The plaintiffs, finally, claim breach of contract because the insurance con-

tract with Northwestern did not permit "arbitrary" cancellation. We fail to find in the record any one-document contract between the parties. The policy of decreasing term life insurance is not there. If plaintiffs rely on a multi-document contract, the documents in the record are the brochure soliciting application, Mr. Warren's application, and a "Life Insurance Memorandum" that is no more than notice that life insurance coverage had been obtained as applied for. These documents do not create a contract that prevents "arbitrary" cancellation, because the brochure plainly states that the insurance protection continues only as long as Wilson is the servicing agent. The summary judgment cannot be supported on this last theory.

We reverse the judgment below and remand this case for further proceedings.

*Judgment reversed and cause remanded.*

PALMER, P.J., and KEEFE, J., concur.