RUDDOCK, APPELLEE, *v.*
CUNNINGHAM ET AL., APPELLANTS.

(No. OT-87-22—Decided December 31, 1987.)

*Douglas O. Meyer,* for appellee.
*George Muehlhauser* and *Robert Moore,* for appellants.

GLASSER, J. This cause is before the court on appeal from a judgment of the Ottawa County Court of Common Pleas.

Plaintiff-appellee, James M. Rud-dock, and decedent, James P. Cunningham, were the sole, equal shareholders in Green's Drug Store, Inc., each possessing two hundred shares of common stock in the corporation. On June 5, 1975, the parties entered into a stock purchase agreement which provided, in part, for the purchase by the corporation of a corporate shareholder's stock in the corporation upon that shareholder's death. Pursuant to Paragraph 9 of the stock purchase agreement, the value of the stock for the 1984-1985 corporate fiscal year was set at $446.95 per share. The total value of each shareholder's shares of corporation stock was $89,390.

The stock purchase agreement further provided that funding of the corporate purchase of the stock owned by a deceased shareholder could be made with the proceeds from life insurance policies which insured the lives of the shareholders. On March 16, 1984, notwithstanding the provision of the stock purchase agreement that the corporation was the owner and beneficiary of such life insurance policies, a $100,000 life insurance policy was acquired by each party insuring the life of the other. The corporation paid the premiums on these policies. One of the provisions of the policy read as follows:

"Suicide: If you commit suicide while sane or insane within two years from the Policy Date, our liability shall be limited to the premiums paid without interest, less any indebtedness."

On September 24, 1985, James P. Cunningham did, in fact, commit suicide. At the time of decedent's death, the stock purchase agreement was in full force and effect.

As a consequence of decedent's suicide and by reason of the suicide clause set forth in the insurance policy, the insurance company refused to pay the $100,000 face amount of the policy to appellee. Pursuant to the suicide

clause in the policy, the premiums paid by the corporation were returned to appellee in the amount of $912.69.

Thereafter, appellee filed a complaint for declaratory judgment in the trial court for a determination of the rights and obligations of the parties to each other arising out of the stock purchase agreement and for a determination of the purchase price to be paid by defendant Green's Drug Store for decedent's interest in the corporation. Appellants filed an answer and a cross-claim against the corporation demanding that the corporation be ordered to purchase, pursuant to the stock purchase agreement, the two hundred shares of corporate stock owned by decedent's estate at a per unit value of $446.95, totaling $89,390.

The judgment of the trial court provided as follows:

"1. Green's Drug Store, Inc. is obligated to purchase the 200 shares of its corporate stock titled in the name of James P. Cunningham from the Co-Executors of James P. Cunningham's estate for the sum of $89,390.

"2. By reason of the breach of the stock purchase agreement by James P. Cunningham, plaintiff has been damaged in the sum of $89,477.32, for which plaintiff is granted judgment against the Estate of James P. Cunningham.

"3. A trust is imposed in favor of Green's Drug Store, Inc., as beneficiary of plaintiff, in the amount of plaintiff's judgment which trust accrued September 24, 1985, and which shall be applied against the corporate obligation to purchase as set forth in paragraph one above."

From said judgment, appellants set out the following assignments of error:

"Assignment of Error No. I: The trial court erred by ruling that the suicide of a shareholder constituted a breach of an implied covenant or condi-

tion of the stock purchase agreement when the expressed language of the stock purchase agreement encompassed death by whatever cause including suicide.

"Assignment of Error No. II: The trial court erred when it ruled that the appellee and corporation were excused from purchasing the deceased shareholder's stock at the agreed purchase price, due to the deceased shareholder's suicide.

"Assignment of Error No. III: The trial court erred when it found that the stock purchase agreement did contain the implied condition or covenant of good faith and fair dealing and that implied condition or covenant was breached by the deceased shareholder committing suicide.

"Assignment of Error No. IV: The decision of the trial courts [sic] is punitive and contrary to law, when the trial court ruled that the appellants would receive $912.69 for the appellants' stock in the corporation which was worth $89,390.00."

In the first assignment of error, appellants contend that the trial court erred by ruling that decedent's suicide constituted a breach of an implied covenant or condition in the stock purchase agreement. For a determination of the rights and obligations of the parties in this case of apparent first impression, we must first look to the stock purchase agreement. Paragraph 8 of the stock purchase agreement provides that:

"Upon death of any Shareholder, the Corporation shall purchase, and the estate of the decedent shall sell, all the decedent's stock in the Corporation now owned or hereafter acquired. The purchase price of such stock shall be computed in accordance with the provisions of paragraph 9 of this agreement."

As noted above and in accord with Paragraph 9 of the agreement, at the

end of the 1984-1985 fiscal year, the stock value of each party was valued at $89,390. Further, Paragraph 11 of the stock purchase agreement provides, in pertinent part, that:

"The corporation agrees that the proceeds of the policies subject to this Agreement shall be applied towards the purchase prices set forth above. If the purchase price as so set forth exceeds the proceeds of the life insurance, * * * twenty-five percent (25%) of the balance of the purchase price shall be paid within three (3) months after the date of the decedent's death. * * * The balance of the purchase price shall be paid in twenty-four (24) equal monthly installments beginning one (1) month from the date the 25% down payment is made. The unpaid balance of the purchase price shall be evidenced by a negotiable promissory note made payable to the estate of the deceased Shareholder, * * * with interest at eight percent (8%) per annum. As security for payment of the unpaid part of the purchase price, as evidenced by the promissory note, the Corporation will execute * * * a Security Agreement and Financing Statement under the provisions of Chapter 1309 of the Ohio Revised Code, thereby giving the estate of the deceased Shareholder or his heirs * * * a secured interest in the Corporation's merchandising inventory, leaseholder improvements, and store fixtures and equipment, and shall thereby give the estate of the deceased Shareholder * * * a second lien upon said merchandise inventory, leaseholder improvements, and store fixtures and equipment, which lien shall be subordinate only to the first lien upon said merchandising inventory, leaseholder improvements, and store fixtures and equipment held by Thomas E. Semon."

Appellee argues that implicit in the stock purchase agreement was a covenant or condition to have available life insurance to provide funds for the purchase of the stock upon the death of a shareholder and that suicide was a breach of such implied covenant or condition. The trial court, finding merit in such contention, granted appellee judgment against the estate of the decedent in the sum of $89,477.32 by reason of breach of said implied covenant.

In *Montgomery* v. *Bd. of Edn. of Liberty Twp.* (1921), 102 Ohio St. 189, 193, 131 N.E. 497, 498, 15 A.L.R. 715, 718, the Ohio Supreme Court stated:

"The law will not insert by construction for the benefit of one of the parties an exception or condition which the parties either by design or neglect have omitted from their own contract."

Further, in *Cincinnati* v. *Cincinnati Reds* (1984), 19 Ohio App. 3d 227, 19 OBR 378, 483 N.E. 2d 1181, paragraph one of the syllabus, the court stated as follows:

"There can be no implied covenants in a contract in relation to any matter that is specifically covered by the written terms of the contract itself."

As noted above, the terms of the stock purchase agreement specifically covered the obligations of the parties upon the death of a shareholder. In a somewhat analogous case, *Wilmington Trust Co.* v. *Clark* (1981), 289 Md. 313, 322, 424 A. 2d 744, 751, the Maryland Court of Appeals in facing a similar issue found as follows:

"The [separation] agreement contains numerous provisions dealing with the effect that the 'death' of either party will have on their respective rights and duties under the agreement, and the term 'death' may have included death resulting from suicide. 'Death' is not defined in the separation agreement. The common meaning ascribed to that word is the 'cessation of life.' *Black's Law Dictionary* 360 (5th ed.

1979); see * * * *Eichner* v. *Dillon,* 73 App. Div. 2d 431, 426 N.Y.S. 2d 517 (1980); *State Dept. of Hum. Serv.* v. *Northern,* 563 S.W. 2d 197 (Tenn. App. 1978). It appears, therefore, that the clear and unambiguous meaning of the term 'death' encompasses death by whatever cause."

The effect that "death" would have on the rights and obligations of the parties was specifically covered in the stock purchase agreement. Because the term "death" was not specifically defined, it will be taken to encompass the party's demise for whatever cause. This logically precludes recognition of an implied promise not to commit suicide and accordingly a party's suicide does not constitute breach of an implied promise not to so act. Therefore, the trial court erred in finding that decedent's suicide was a breach of the stock purchase agreement and erred in granting appellee damages in the sum of $89,477.32. Appellants' first assignment of error, therefore, is found well-taken and granted.

Appellants contend in the second assignment of error that the trial court erred in excusing appellee from purchasing decedent's stock at the agreed purchase price. This determination was premised on the rule adopted in Ohio that:

" 'If a promisor prevents or hinders the occurrence of a condition, or the performance of a return promise, and the condition would have occurred or the performance of the return promise been rendered except for such prevention or hindrance, the condition is excused * * *.' " *Werner* v. *Biederman* (1940), 64 Ohio App. 423, 428, 31 Ohio Law Abs. 655, 658-659, 18 O.O. 186, 188-189, 28 N.E. 2d 957, 959, quoting 1 Restatement of Law, Contracts (1932), Section 295, at 438.

As noted above, the stock purchase agreement specifically provided for the effect that death would have on the rights and obligations of the parties. Accordingly, in Assignment of Error No. I this court found there was no implied promise not to commit suicide in the instant case. Therefore, decedent's actions cannot be said to have prevented or hindered the performance of appellee's promise to purchase decedent's corporation stock. There was no guarantee that the insurance on either party's life would provide the sole source of funds for the stock purchase. Moreover, as noted above, Paragraph 11 of the stock purchase agreement itself provided for the contingency that insurance proceeds would not necessarily cover the purchase of the deceased shareholder's stock. Regardless of the cause of decedent's death, appellee is not excused from his obligation to purchase decedent's shares in the corporation. Appellants' second assignment of error is, therefore, found well-taken and granted.

Appellants, in the third assignment of error, contend that the trial court erred in finding that the stock purchase agreement contained a covenant of good faith that was breached by decedent's suicide. The Ohio Supreme Court addressed this issue in *Slater* v. *Motorists Mut. Ins. Co.* (1962), 174 Ohio St. 148, 21 O.O. 2d 420, 187 N.E. 2d 45, paragraph two of the syllabus, stating as follows:

"A lack of good faith is the equivalent of bad faith, and bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another."

As stated *supra,* decedent's

suicide was not precluded under the terms and conditions of the stock purchase agreement. Regardless of the cause of decedent's death, appellee was obligated to purchase decedent's shares in the corporation. To avoid repetition of the arguments already made, it suffices to say that there has been no evidence to lead this court to believe that decedent's actions constituted a breach of good faith. Accordingly, appellants' third assignment of error is found well-taken and granted.

Appellants contend in the fourth and final assignment of error that the decision of the trial court is punitive in nature and as such should be reversed. Due to the disposition of Assignments of Error Nos. I, II and III, we need not address this issue. Accordingly, Assignment of Error No. IV is moot and, therefore, found not well-taken and denied.

On consideration whereof, the court finds substantial justice has not been done the party complaining and the judgment of the Ottawa County Court of Common Pleas is reversed. This court affirms the trial court's finding that Green's Drug Store, Inc. is obligated to purchase from decedent's estate the two hundred shares of its corporate stock titled in James P. Cunningham's name. As noted above, we find no breach of the stock purchase agreement; hence, the trial court's award of $89,477.32 in damages to appellee against decedent's estate for breach of the agreement is reversed. Pursuant to App. R. 12(B), this court enters the judgment the trial court should have entered, i.e., that appellee's purchase of decedent's corporate stock is to comport with the provisions of the stock purchase agreement entered into by the parties, wherein the manner and schedule for payment of the purchase price is set forth. Appellee is ordered to pay the court costs of this appeal.

*Judgment reversed.*

HANDWORK, P.J., and RESNICK, J., concur.