BENNCO LIQUIDATING COMPANY et al., Appellants,

v.

AMERITRUST COMPANY NATIONAL ASSOCIATION, Appellee.

[Cite as *Bennco Liquidating Co. v. Ameritrust Co. Natl. Assn.* (1993), 86 Ohio App.3d 646.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 61777.

Decided March 8, 1993.

*Miller, Stillman & Bartel, Willard E. Bartel* and *R. Jack Clapp*, for appellants.

*Reminger & Reminger Co., L.P.A.*, and *Nicholas D. Satullo*, for appellee.

NAHRA, Presiding Judge.

Plaintiffs Bennco Liquidating Company ("Bennco") and John Bennett timely appeal the granting of summary judgment for defendant Ameritrust Company National Association ("Ameritrust" or "the bank"). For the reasons set forth below, we affirm.

Bennco is the successor company to the Bennett Corporation, of which John Bennett was president. Bennco was formed for the liquidation of the Bennett Corporation. In August 1986, the Bennett Corporation entered into a financing arrangement with Ameritrust. A written security agreement provided for a loan value equal to eighty-five percent of the accounts receivable plus fifty percent of the inventory or $600,000, whichever was the lesser. The agreement, however, specifically provided that the "Bank shall at all times be under no duty to make any loan to the borrower." The parties originally agreed to an interest rate of one and one-half percent above the bank's base lending rate. In October 1987, the interest rate was raised to three percent above the base rate with Bennett Corporation's consent. At this time, the bank also required the corporation to report its inventory on a daily basis instead of monthly.

Bennett Corporation experienced financial difficulties in 1987 and lost $300,000 by the end of the fiscal year. On February 2, 1988, the parties agreed to a change in the loan value by decreasing the advance rate on eligible inventory by two percent a month until the rate reached forty percent. In March 1988, the bank determined that $37,000 of inventory was ineligible for inclusion in the formula for determining the loan value. The bank also refused to advance funds to cover a $70,000 check written by the corporation to a supplier.

During this time, a buyer was sought for the corporation. In March 1988, the bank extended credit to another customer, Seaway Corporation, thereby enabling Seaway to offer to buy Bennett Corporation. Seaway rescinded this offer a

month later apparently due to Bennett Corporation's financial difficulties. The corporation subsequently accepted a second, less favorable offer from Seaway.

Bennco and John Bennett sued the bank, alleging tortious interference in the sale of the corporation, negligence in the administration of the credit line and intentional/negligent infliction of emotional distress. The plaintiffs claimed that the bank failed to act in good faith under the security agreement, thereby contributing to the corporation's financial difficulties and the less favorable offer from Seaway. The plaintiffs also cite the bank's failure to disclose its dealings with Seaway as evidence of bad faith. The bank moved for summary judgment on all counts of the complaint. The trial court granted the motion and the plaintiffs appealed.

The sole assignment of error states:

"The trial court erred, to the detriment of the plaintiff-appellants, in granting Ameritrust's motion for summary judgment as there existed genuine issues of material fact as to whether Ameritrust interfered with plaintiff's business relations and acted in bad faith."

Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In reviewing a summary judgment motion, the court must construe the evidence in a light most favorable to the party opposing the motion. *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 517 N.E.2d 904; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

Bennco and John Bennett initially argue the bank breached its duty to act in good faith in administering the security agreement. R.C. 1301.09 provides that every contract governed by the Uniform Commercial Code imposes an obligation upon the parties to act in good faith. R.C. 1301.01(S) defines "good faith" as "honesty in fact in the conduct or transaction concerned." See *Master Chem. Corp. v. Inkrott* (1990), 55 Ohio St.3d 23, 563 N.E.2d 26. See, also, *Werner v. Biederman* (1940), 64 Ohio App. 423, 429, 18 O.O. 186, 189, 28 N.E.2d 957, 959–960; *Avon Excavating Co. v. Parma* (Dec. 31, 1980), Cuyahoga App.No. 41557, unreported.

Bennco and John Bennett cite six actions by the bank which allegedly constitute bad faith: (1) substantially increasing the interest rate that had been agreed to; (2) arbitrarily determining that $37,000 of Bennco's inventory was ineligible to be included in the formula that determined the amount of said "loan value"; (3) changing the loan formula set forth in its lending agreement to determine "loan value"; (4) changing the basis upon which Bennco's inventory was valued from a monthly basis to a daily basis; (5) insisting that Bennco hire the services of outside consultants recommended by Ameritrust, and then refusing to accept

their advice; and (6) refusing to honor Bennco's check without adequate notice despite the bank's past practice and custom of allowing overdrafts.

In addition, the plaintiffs argue the bank breached its duty of good faith by not disclosing its lending relationship with Seaway. They imply the bank restricted Bennett Corporation's borrowing ability in order to decrease the company's value and enable Seaway to obtain it at a lower price. We note plaintiffs do not allege the bank breached the explicit terms of the security agreement.

In support of their position, plaintiffs rely on *K.M.C. Co., Inc. v. Irving Trust Co.* (C.A.6, 1985), 757 F.2d 752. In *K.M.C.*, a borrower sued a lender for breach of a financing agreement under which the lender held a security interest in account receivables and inventory in exchange for advancing a $3.5 million line of credit to the borrower. The agreement also gave the lender sole discretion as to whether to advance funds. *Id.* at 759. The borrower experienced financial difficulties and, without notice, the lender refused to advance $800,000 which would have brought the loan value to just under the $3.5 million limit. The court held that an implied obligation to act in good faith required the lender to give notice to permit the borrower an opportunity to seek other financing, despite the fact that the agreement did not require the lender to provide notice before refusing further advances.

■ Courts have not uniformly accepted the holding in *K.M.C.* In Ohio, a lender's decision to enforce its contract rights is not considered an act of bad faith. *See First Fed. S. & L. Assn. of Akron v. Cheton & Rabe* (1989), 57 Ohio App.3d 137, 567 N.E.2d 298; *Third Natl. Bank & Trust Co. v. Sinder* (June 18, 1987), Montgomery App.No. 9995, unreported, at 25, 1987 WL 12965. As the Seventh Circuit Court of Appeals stated in *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting* (C.A.7, 1990), 908 F.2d 1351:

"Firms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without being mulcted for lack of 'good faith'. Although courts often refer to the obligation of good faith that exists in every contractual relation, *e.g.,* UCC § 1–201; *Jordan v. Duff & Phelps, Inc.,* 815 F.2d 429, 438 (7th Cir.1987), this is not an invitation to the court to decide whether one party ought to have exercised privileges expressly reserved in the document. 'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties.

" * * *

"Although Bank's decision left Debtor scratching for other courses of credit, Bank did not create Debtor's need for funds, and it was not contractually obliged to satisfy its customer's desires. The Bank was entitled to advance its own

interests, and it did not need to put the interests of Debtor and Debtor's other creditors first. To the extent *K.M.C., Inc. v. Irving Trust Co.,* 757 F.2d 752, 759–63 (6th Cir.1986 [1985]), holds that a bank must loan more money or give more advance notice of termination than its contract requires, we respectfully disagree. First Bank of Whiting is not an eleemosynary institution. It need not throw good money after bad, even if other persons would catch the lucre." *Id.* at 1357–1358.

We must initially determine whether Ameritrust had a contractual right to take the six actions challenged by plaintiffs. Our review of the security agreement and related documents demonstrate Ameritrust acted within its rights. The parties originally agreed to an interest rate equal to one and one-half percent above the bank's base lending rate. In October 1987, Bennett Corporation signed an amendment to the security agreement raising the interest rate to three percent above the base rate. In a February 1988 letter, Bennett Corporation also consented to a decrease in the advance rate on eligible inventory. As to the bank's decision to disqualify $37,000 of inventory from the formula for determining the loan value and increase the inventory reporting schedule, the security agreement gave the bank the right to update its inventory information at any time and to unilaterally decide whether to loan any funds to the corporation.

The record also does not support the corporation's contention that the bank was required to follow the advice of the consultant hired by the corporation. It is undisputed the bank recommended the hiring of the consultant. Nothing in the agreement or other documents, however, indicates the bank had any obligation to heed his advice. In his answers to interrogatories, John Bennett admitted no such written obligation existed. Finally, the bank had a right to refuse payment on the $70,000 check. In his deposition, John Bennett acknowledged he knew the check would create an overadvance situation and that he had been informed the bank would only cover a check up to $30,000. As previously noted, the security agreement stated the bank was under no obligation to loan any money to the corporation.

Plaintiffs also failed to demonstrate that the bank breached a duty of good faith by not disclosing its lending relationship with Seaway. It appears Seaway was a customer of the bank with a $25 million credit line before Seaway expressed an interest in purchasing the Bennett Corporation. The record indicates the loan officer in charge of Bennett Corporation's account learned of Seaway's interest in a February 23, 1988 meeting. Bennett Corporation's financial difficulties and the bank's decision to raise the interest rate, require daily inventory reporting and change the loan value by decreasing the advance rate on eligible inventory predated this meeting. Further, the bank extended $2 million in additional credit to Seaway to enable it to make the original offer by the Bennett Corporation. We find that the affidavit of expert Douglas Austin, who concluded the bank's

decision to tighten the corporation's credit as well as to not disclose its lending relationship with Seaway demonstrated bad faith, raises no genuine issue of material fact. As we previously noted, the bank had the contractual right to restrict the corporation's credit. Austin's assumption that the bank took these steps to decrease the company's value and enable Seaway to obtain the corporation at a lower price is purely speculative and the plaintiffs offered no evidence to support this bare allegation.

In light of these facts, we find the trial court properly granted summary judgment on plaintiffs' claim that the bank breached a duty to act in good faith in administering the security agreements.

Plaintiffs also assert the court erred in granting summary judgment on their claim for tortious interference with a business relationship. They claim the same six actions by the bank caused them financial difficulties and resulted in the less favorable, second offer from Seaway. It is well established that one who is asserting a legally protected interest cannot be held liable for tortious interference. *Bell v. Le–Ge, Inc.* (1985), 20 Ohio App.3d 127, 129, 20 OBR 160, 161–162, 485 N.E.2d 282, 283–284. As previously noted, the bank had a contractual right to take the challenged actions. Further, the plaintiffs offered no evidence that the bank used its position to enable Seaway to buy the Bennett Corporation at a reduced value. Thus, it cannot be held liable for tortious interference with the Seaway contract and summary judgment also was proper on this claim.

The assignment of error is overruled.

*Judgment affirmed.*

HARPER and NUGENT, JJ., concur.