SALEM, Appellant,

v.

CENTRAL TRUST CO., N.A., Appellee.

[Cite as *Salem v. Cent. Trust Co., N.A.* (1995), 102 Ohio App.3d 672.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–930932.

Decided April 26, 1995.

*Stephen R. Felson,* for appellant.

*Frost & Jacobs, Scott D. Phillips* and *Richard M. Goehler,* for appellee.

---

*Per Curiam.*

On August 29, 1986, plaintiff-appellant, Richard N. Salem, assigned to defendant-appellee, Central Trust Co., N.A., a $300,000 life insurance policy issued to him by Crown Insurance Company as partial security for a previously incurred debt. Under the terms of the assignment, Central Trust had the contractual right to surrender the policy if Salem defaulted on the loan.

Salem later defaulted on the loan. He filed bankruptcy, listing the policy as an asset of the estate. On November 10, 1989, Central Trust surrendered the policy to Crown, with a letter stating that "proper abandonment of this policy through the Bankruptcy Court to the bank has been obtained." The cash surrender value of the policy was $8,261.48, of which Central Trust received $1,239.22.

On August 17, 1992, Salem filed a complaint against Central Trust alleging that Central Trust had breached a fiduciary duty owed to him. Subsequently, Central Trust filed a motion for summary judgment. In opposition to the motion, Salem presented an affidavit in which he stated that he and his attorney had met with Central Trust representatives in 1989 to discuss his loan. At this meeting, Central Trust representatives promised him they would not surrender the policy since they knew he could not obtain other insurance except at a prohibitive cost because of a preexisting medical condition. Instead, Salem claimed that the parties agreed that Central Trust would obtain an amount equal to the cash surrender value of the policy from Crown while keeping the policy in force and that Salem would bring the premiums up to date and repay that amount to Crown with interest. Salem also stated in his affidavit that Central Trust representatives were "intimately involved" in all of his financial affairs at the time

and that they knew or should have known that any representation that the policy had been abandoned by the bankruptcy trustee was false.

■ The trial court granted Central Trust's motion for summary judgment. Salem appealed from that judgment. Following oral argument, this court ordered the parties to submit supplemental briefs on the issue of whether this court has subject-matter jurisdiction over the action when the subject of the action was listed as an asset in the petition for bankruptcy and when the record is silent as to whether the policy was abandoned by the bankruptcy trustee. After reviewing the briefs submitted by the parties and conducting further research, we conclude that this court does have jurisdiction.

■ When an individual files a petition in bankruptcy, the automatic stay provision precludes a creditor from taking action to collect the debt or to exercise control over property of the estate. Section 362(a), Title 11, U.S.Code; *Assn. of St. Croix Condominium Owners v. St. Croix Hotel Corp.* (C.A.3, 1982), 682 F.2d 446, 448. The automatic stay is effective upon the filing of the petition and no formal notice is required. *Schindler v. Schindler* (1994), 95 Ohio App.3d 277, 281, 642 N.E.2d 404, 406; *In re Davis* (N.D.Ohio 1987), 74 B.R. 406, 410. Any action taken in violation of the stay is void. *In re Calder* (C.A.10, 1990), 907 F.2d 953, 956; *Kingsmen Ent., Inc. v. Kasunic* (Feb. 17, 1994), Cuyahoga App. No. 64720, unreported, 1994 WL 50661. However, the automatic stay only applies to actions against the debtor; it does not apply to actions initiated by the debtor. *Harris v. Alexander Grant & Co.* (1990), 61 Ohio App.3d 172, 179–180, 572 N.E.2d 226, 231; *Laventhol & Horwath v. Lawrence J. Rich Co., L.P.A.* (M.C.1991), 62 Ohio Misc.2d 718, 720, 610 N.E.2d 1214, 1215; *St. Croix, supra,* 682 F.2d at 448.

This case is not an *in rem* action involving the policy itself. Instead, it is a tort action for breach of fiduciary duty initiated by the debtor and the specific terms of the policy are not at issue. Therefore, we conclude that the automatic stay does not preclude this action.

■ We turn now to the merits of the appeal. In his sole assignment of error, Salem states that the trial court erred in granting Central Trust's motion for summary judgment. He argues that he had an informal relationship with Central Trust in which both parties understood that he had placed special trust and confidence in Central Trust regarding the handling of the collateral. He also argues that Central Trust breached its statutory duty to act in good faith in dealing with the collateral in its possession. We find this assignment of error is not well taken.

Salem relies upon *Stone v. Davis* (1981), 66 Ohio St.2d 74, 20 O.O.3d 64, 419 N.E.2d 1094. In that case, Danny and Judy Davis, a young married couple, applied for financing from a savings and loan to purchase a dairy farm. The

savings and loan approved the mortgage loan application and presented the couple with a disclosure form which contained a space for the borrowers to indicate whether they desired mortgage insurance. The husband signed this portion of the form. However, the lender failed to take any steps to procure mortgage insurance for the husband and did not advise the borrowers that they had to procure insurance themselves. Subsequently the husband died without ever having obtained mortgage insurance. His widow then brought an action against the lender for breach of fiduciary duty. The trial court found in favor of the widow and the supreme court affirmed.

■ The court first recognized that, in most instances, the relationship between a creditor and debtor, which is governed by freedom of contract, is not a fiduciary relationship. *Id.,* 66 Ohio St.2d at 78, 20 O.O.3d at 66–67, 419 N.E.2d at 1097. It went on to define a fiduciary relationship as " 'one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.' " *Id.,* quoting *In re Termination of Employment* (1974), 40 Ohio St.2d 107, 115, 69 O.O.2d 512, 517, 321 N.E.2d 603, 609. A fiduciary relationship can arise out of an informal relationship where "both parties understand that a special trust or confidence has been reposed." *Stone, supra,* at 78, 20 O.O.3d at 67, 419 N.E.2d at 1097–1098.

In finding that a fiduciary relationship existed in the case before it, the court stated:

"The facts surrounding and the setting in which a bank gives advice to a loan customer on the subject of mortgage insurance warrant a conclusion that, in this aspect of the mortgage loan process, the bank acts as its customer's fiduciary and is under a duty to fairly disclose to the customer the mechanics of procuring such insurance.

"We observe that, while a bank and its customer may be said to stand at arm's length in negotiating the terms and conditions of a mortgage loan, it is unrealistic to believe that this equality of position carries over into the area of loan processing, which customarily includes advising the customer as to the benefits of procuring mortgage insurance on the property which secures the bank's loan.

"In the case before us, Judy Davis and her husband Danny came to Ashtabula S & L as a young married couple, apparently encountering the complex mortgage loan process for the first time in their lives. Undoubtedly, their every action in assisting the expeditious processing of their loan was guided by officers of Ashtabula S & L, upon whom they justifiably relied as experts in the field of loan processing. When Ashtabula S & L broached the subject of mortgage insurance and elicited an expressed desire for it by Danny Davis, both sides to the loan

transaction must have understood that a special trust or confidence had been reposed in Ashtabula S & L to advise and assist the Davises in procuring the insurance. When Ashtabula S & L negligently failed to adhere to its customary policy of informing the Davises that they must procure the mortgage insurance themselves, it breached the fiduciary duty of fair disclosure which it owed to them." *Id.*, 66 Ohio St.2d at 78–79, 20 O.O.3d at 66–67, 419 N.E.2d at 1098.

Subsequently, in *Blon v. Bank One, Akron, N.A.* (1988), 35 Ohio St.3d 98, 519 N.E.2d 363, the Supreme Court distinguished *Stone*. In that case, Geraldine and Richard Blon purchased a used car from West Chevrolet, Inc. They also signed a vehicle service contract for $500. West arranged for financing of both the car and service contract through Bank One. West received a fee of three percent of the face amount of the loan for preparing and placing the Blons' loan with Bank One according to a sliding fee schedule which was not disclosed to the Blons. Subsequently the Blons notified West and Bank One of their intent to cancel the service contract. Bank One received a refund check from West for $500 and applied it to reduce the Blons' principal indebtedness on their loan. The Blons, believing that the application of the refund "inequitably deprived them of a proper adjustment of their loan," filed suit against Bank One and West. The trial court granted summary judgment in favor of Bank One. The court of appeals reversed.

The Supreme Court reversed the court of appeals, finding that reasonable minds could only conclude that Bank One had no special relationship of trust and confidence with the Blons and, therefore, had no duty to disclose the details of its fee arrangement with West. The court stated that "[t]he court in *Stone* expressly distinguished the area of loan processing, in which the fiduciary duty was held to arise, from the negotiation of the terms and conditions of a mortgage loan in which the bank and its customer engaged in an arm's-length transaction." *Blon, supra,* 35 Ohio St.3d at 102, 519 N.E.2d at 368.

The court then held:

"A creditor and consumer stand at arm's length in negotiating the terms and conditions of a consumer loan, and absent an understanding by both parties that a special trust and confidence has been reposed in the creditor, the creditor has no duty to disclose to the consumer the existence and details of a finder's fee or similar arrangement with a credit arranger." *Id.* at paragraph two of the syllabus.

Similarly, in *Warren v. Percy Wilson Mtge. & Fin. Corp.* (1984), 15 Ohio App.3d 48, 15 OBR 76, 472 N.E.2d 364, this court found *Stone* inapplicable in this context. We stated:

"We do not read *Stone* as holding that the mere 'broaching' of the subject of mortgage insurance by the lender will, by itself and without more, create that special relationship of trust and confidence known as a fiduciary relationship out of what is otherwise a routine business relationship. * * * [t]he mere giving of advice does not convert a business relationship (debtor and creditor) into a fiduciary relationship * * *." *Id.* at 51, 15 OBR at 79, 472 N.E.2d at 367. See, also, *Craggett v. Adell Ins. Agency* (1993), 92 Ohio App.3d 443, 635 N.E.2d 1326; *Kohus v. Fifth Third Bank Corp.* (Nov. 27, 1991), Hamilton App. No. C–900306, unreported, 1991 WL 249975; *Shaner v. United States* (C.A.6, 1992), 976 F.2d 990; *Eyerman v. Mary Kay Cosmetics, Inc.* (C.A.6, 1992), 967 F.2d 213.

██ The record in this case does not establish that a fiduciary relationship existed between Salem and Central Trust. A fiduciary relationship cannot be created unilaterally. *Craggett, supra,* at 451, 635 N.E.2d at 1331. Salem did not establish that Central Trust understood that he was placing special trust or confidence in the relationship. The record shows that Salem is a businessman and that the parties engaged in an arm's-length transaction. The parties only had one meeting and we do not believe that Central Trust's alleged promise not to surrender the collateral created a fiduciary relationship. In surrendering the policy, Central Trust was simply exercising its contractual right. See *Tool Steel Products Sales Corp. v. XTEK, Inc.* (Jan. 29, 1993), Hamilton App. No. C–910533, unreported, 1993 WL 19476.

We find no issues of material fact. Construing the evidence most strongly in Salem's favor, we hold that reasonable minds can come to but one conclusion, that no fiduciary relationship existed. Therefore, Central Trust was entitled to judgment as a matter of law and the trial court did not err in granting summary judgment in its favor. See *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47.

██ Salem further argues that Central Trust had a security interest in the insurance policy within the meaning of R.C. 1309.11. Therefore, he contends, Central Trust owed him a duty of good faith pursuant to R.C. 1301.09, which it breached by surrendering the policy. We need not reach the question of whether this case involves a security agreement covered by R.C. Chapter 1309 because a lender's decision to enforce its contract rights is not an act of bad faith. *Metro. Life Ins. Co. v. Triskett Illinois, Inc.* (1994), 97 Ohio App.3d 228, 238, 646 N.E.2d 528, 534; *Bennco Liquidating Co. v. Ameritrust Co. Natl. Assn.* (1993), 86 Ohio App.3d 646, 649, 621 N.E.2d 760, 762. "Firms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without being mulcted for lack of 'good faith.'" *Bennco, supra,* at 649, 621 N.E.2d at 762, quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting* (C.A.7, 1990), 908 F.2d 1351, 1357–1358.

We hold that Central Trust did not breach its duty to act in good faith. Therefore, it was entitled to judgment as a matter of law and the trial court did not err in granting summary judgment in its favor. See *Harless, supra.* Accordingly, Salem's sole assignment of error is overruled.

*Judgment affirmed.*

GORMAN, P.J., DOAN and M.B. BETTMAN, JJ., concur.