CHILDERS et al., Appellees,

v.

COMMERCE MORTGAGE INVESTMENTS, Appellant.

[Cite as *Childers v. Commerce Mortgage Investments* (1989), 63 Ohio App.3d 389.]

Court of Appeals of Ohio,
Summit County.

No. 13795.

Decided June 28, 1989.

*Saundra J. Robinson*, for appellees.

*John C. Fickes*, for appellant.

BAIRD, Judge.

This cause came before the court upon the appeal of appellant Commerce Mortgage Investments, Ltd., ("CMI"), from the decision of the trial court awarding judgment to appellees Stanley J. and Keren P. Childers.

The Childerses owned a house in Akron. In the spring of 1986, they wanted to secure a second mortgage on the property. Diamond Acceptance Corporation ("Diamond") agreed to loan the Childerses the money they desired. As a condition of securing the loan, the Childerses executed a note in favor of Diamond in the amount of $17,500. They then gave this note and a mortgage deed encumbering their house to Diamond on March 28, 1986.

The Childerses were advised that they would receive their loan in sixty to ninety days. However, they never received any funds whatsoever. Therefore, after the expiration of the ninety days, the Childerses wrote Diamond cancelling what they believed to be a loan application.

Unbeknownst to the Childerses, CMI purchased the note and mortgage deed from Diamond on April 3, 1986. This was not unusual, since CMI purchased all of Diamond's notes. The record demonstrates the close relationship between these two business entities. They were located in the same building. An individual named Barton Greenberg was the chairman of Diamond's Board of Directors, and a director of CMI. Furthermore, even though the file from Diamond contained irregularities, including lack of the actual mortgage, CMI purchased it anyway. CMI relied on a corporate guarantee from Diamond that it would have the first and best lien, and in the event it did not, Diamond would take the mortgage back and replace it with another.

At some point during July or August 1986, CMI became aware of the fact that a large number of Diamond's mortgages had not been dispersed, including the mortgage to the Childerses. Nevertheless, on September 8, 1986, CMI recorded the mortgage it held in the Childerses' property which it purchased in April 1986.

Following this recordation, the Childerses located a couple who were ready, willing, and able to buy their home for $18,500. However, the parties were unable to close the sale because of the mortgage which CMI had recorded. The Childerses asked CMI to cancel this mortgage, but CMI refused. As a result of this cloud on their title, the Childerses were unable to sell their house. Thereafter, the Childerses brought this lawsuit and received judgment in their favor against CMI and Diamond. CMI appeals and cites two errors.

## Assignment of Error I

"The trial court erred by finding that Commerce Mortgage Investments, Ltd. slandered the title of Stanley J. Childers and Keren P. Childers in the subject premises by its act of recording the assignment of their mortgage."

 This assignment of error is vaguely worded and appears to invite a general review of the findings of the trial court. However, it is apparent

from CMI's brief that its argument is that it did not slander the Childerses' title because it did not record the assignment of the mortgage maliciously.

■ One is liable for slander of title where he falsely and maliciously defames the property of another, causing the other special damage. *Buehrer v. Provident Mut. Life Ins. Co.* (1930), 37 Ohio App. 250, 253, 174 N.E. 597, 599, affirmed (1931), 123 Ohio St. 264, 175 N.E. 25. The malice shown need not be that of a personal hatred, and an act will be deemed malicious if made in reckless or wanton disregard of the rights of another. 35 Ohio Jurisprudence 3d (1982) 495–496, Defamation and Privacy, Sections 55–56.

CMI asserts that at the time it recorded the mortgage on the Childerses' property, it did not act maliciously because it believed it was a holder in due course. CMI claims that when it first became a holder of the note and mortgage, it was unaware that Diamond had failed to pay consideration. Therefore, CMI reasons that it became a holder in due course at that time, and was justified in recording its interest even after it discovered that Diamond had paid no consideration to the Childerses.

The problem with CMI's reasoning is that it is based on facts different from those found by the trial court. The trial court specifically found that at the time CMI purchased the note and mortgage from Diamond, it knew, or should have known, that the underlying transaction with the Childerses was invalid for want of consideration. This finding of the trial court is amply supported by the record. In short, when CMI recorded the mortgage, it knew Diamond had paid no consideration for it. CMI knew or should have known when it first purchased the note and mortgage that Diamond had given no consideration for it. The record supports the trial court's finding that CMI's recording of the mortgage in these circumstances was malicious in that it was done in reckless disregard of the rights of the Childerses. Accordingly, CMI's first assignment of error is not well taken.

### Assignment of Error II

"The trial court erred in its calculation of the money damages able to be awarded to the Childerses for slander of their title in the subject premises."

■ In its second assignment of error, CMI asserts that even if it is liable to the Childerses, the trial court incorrectly computed the measure of special damages it should pay. CMI has not objected to the trial court's award of attorney fees, so we will not address any aspect of that award.

■ In an action for slander of title, the plaintiff may only recover for special pecuniary loss. 35 Ohio Jurisprudence 3d (1982) 590–591, Defamation and Privacy, Section 156.

■ Additionally, the defendant's false statement must be a " * * * substantial factor in bringing about the loss. * * *" Restatement of the Law 2d, Torts (1977) 352, Section 632.

The Restatement identifies "recoverable pecuniary loss" as follows:

"(1) The pecuniary loss for which a publisher of injurious falsehood is subject to liability is restricted to

"(a) the pecuniary loss that results directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement, and

"(b) the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement.

"(2) This pecuniary loss may be established by

"(a) proof of the conduct of specific persons, or

"(b) proof that the loss has resulted from the conduct of a number of persons whom it is impossible to identify." *Id.* at 355, Section 633.

We find that the rules for computation of damages set forth in the Restatement are appropriate. The Childerses are entitled to recover from CMI all pecuniary losses they suffered in which CMI's recording of the mortgage was a substantial factor in causing the loss.

The trial court did not determine damages in the manner which we have set forth. Apparently, the trial court found CMI liable to the Childerses for, among other things, the entire $18,500 amount for which they could have sold their house if not for CMI's actions. Additionally, the trial court allowed the Childerses' to keep the house. In effect, this gave the Childerses a double recovery, to which they are not entitled. Accordingly, CMI's second assignment is well-taken.

CMI's first assignment of error is not well taken. Its second assignment of error is well taken and we reverse and remand this case to the trial court for a determination of damages consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

CACIOPPO, P.J., and QUILLIN, J., concur.