**The OAK RUBBER COMPANY, et al., Plaintiffs,**

v.

**BANK ONE, N.A., Defendant.**

**No. 1:02–CV–416.**

United States District Court, N.D. Ohio, Eastern Division.

July 26, 2002.

---

Beth E. Hansen, Robert R. Kracht, Robert W. McIntyre, Scott J. Dean, McIntyre, Kahn, Kruse & Gillombardo, Cleveland, OH, for Plaintiffs.

Christopher P. Fisher, Isaac Schulz, Ulmer & Berne, Cleveland, OH, for Defendant.

## ORDER

GWIN, District Judge.

On March 12, 2002, Defendant Bank One filed a motion for summary judgment [Doc. 8]. On July 3, 2002, Plaintiffs The Oak Rubber Company and Oak Tennessee, Inc. (collectively "Oak Rubber") filed their motion for summary judgment [Doc. 102]. The parties oppose each others motion. Because there are few material facts at issue and most of the plaintiffs' claims fail as a matter of law, the Court grants the defendant's motion for summary judgment on all but two of the plaintiffs' claims. Because there is an issue of material fact regarding the plaintiffs' claim concerning the interest charged by Bank One, the Court denies the defendant's motion for summary judgment on Oak Rubber's breach of contract claim as to that issue. The Court also denies the defendant's motion for summary judgment on the slander of title claim because there is an issue of fact whether the Bank One's actions were malicious. The Court denies the plaintiffs' motion for summary judgment.

## I. BACKGROUND

The plaintiffs' claims revolve around a business loan Oak Rubber obtained from Bank One and Bank One's alleged behavior in altering that loan. Specifically, plaintiffs say that Bank One violated the *Bank Holding Company Act*, 12 U.S.C. § 1972, by attempting to force Oak Rubber to renegotiate its credit agreement to terms more favorable to Bank One. In support of this claim, Oak Rubber says the defendant threatened to call due the previous loan, even though not in default, unless Oak Rubber agreed to change the loan to terms more favorable to Bank One.

Next, the plaintiffs say the defendant's actions of improperly perfecting liens on Oak Rubber's assets and then demanding repayment on the credit extended were extortionate loan collection techniques in violation of 18 U.S.C. § 894, thus making Oak Rubber eligible to recover as a crime victim under section 2307.60 of the Ohio Revised Code. The plaintiffs also say that Bank One's actions give rise to state law claims for breach of contract, fraud, slander of title, and breach of good faith. Besides, the excess interest allegedly paid, Oak Rubber says Bank One's collective actions prevented it from securing alternative financing which in turn purportedly impacted its business activities.

Bank One denies that its actions were improper. Instead, the defendant says that it attempted to renegotiate Oak Rubber's lending agreement because Oak Rubber had become a bad credit risk. Specifically, the defendant says it did not violate the federal anti-tying law because its attempt to renegotiate Oak Rubber's lending agreement was not anticompetitive or an unusual banking practice. With respect to the plaintiffs' charge of extortionate loan collection, Bank One says Congress intended the relevant statute to address organized crime and the violent collection methods associated with it. The defendant says nothing alleged in the complaint could possibly fall within the activity covered by the statute.

With respect to the state law claims, Bank One says the alleged conduct has not damaged the plaintiffs. The defendant says that Oak Rubber has not paid any interest it was not obligated to pay under the agreements it signed. In addition, Bank One says it released the security interest it mistakenly took in Oak Rubber's assets before the mistake damaged Oak Rubber. Because the plaintiffs have not alleged any harm caused by the mistaken liens, the defendant says all of the state law claims should fail.

## II. FACTUAL BACKGROUND

Oak Rubber is a family owned business that operates the only manufacturer of latex gloves doing business in the United States. On December 23, 1993, the parties executed a loan agreement and promissory note under which Bank One made available a $6 million secured line of credit to Oak Rubber. The applicable interest rate was Oak Rubber's choice of the Libor rate plus 150 basis points or the Prime rate plus zero. The parties agreed that the promissory note would be payable on demand:

> Principal and interest are immediately due and payable on demand but until such time as demand for payment is made, accrued interest thereon is due and payable as hereinafter provided:
>
>> Date of first interest payment: 01/01/94, and continuing monthly thereafter, until demand is made.
>
> This note is issued in conjunction with an agreement or letter dated 12–23, 1993, to which reference is made, and is supported by other security documents.

(Pls.' Mot. for Summ.J.Ex. N at 1). The promissory note goes on to say:

> If this Note is due and payable on demand it is subject to being called at any time upon actual demand by BANK ONE. The inclusion of a payment schedule is merely to provide terms for payment in the absence of actual demand and does not affect or impair BANK ONE's absolute right to demand payment of this Note at any time. Obligor agrees that BANK ONE may delay demand until, or make demand at anytime before, any payment date specified in the demand payment section of this Note.

(Pls.' Mot. for Summ.J.Ex. N. at 2).

On May 29, 1997, the parties changed the terms of the credit line through a modification agreement ("1997 modification agreement"). The modification agreement changed Oak Rubber's credit line from secured to unsecured. In turn, Bank One required Oak Rubber to execute a negative pledge of its assets [1] and maintain a debt to worth ratio of less than 1:1 at all times. The May 29, 1997, modification agreement did not change Oak Rubber's interest rate.

In May 2000, Oak Rubber says that Bank One began attempting to force Oak Rubber to restructure the credit facility in a way unfavorable to Oak Rubber. The plaintiffs say that in July 2000, a vice-president of Bank One contacted it and made various requests concerning changes in the way Oak Rubber did business. According to the plaintiffs, this vice-president threatened to call the loan in default without justification.

The plaintiffs say that Bank One unilaterally raised the interest rate in an attempt to force Oak Rubber out of the lending agreement. Bank One also failed to release the liens on Oak Rubber's assets as required by the 1997 modification agreement. Oak Rubber also says that Bank One took the affirmative step of continuing the liens by filing UCC continuation statements on July 16, 1998, and September 25, 2000. Finally, Oak Rubber says that Bank One unilaterally reduced its credit line from $6 million to $3.5 million, then raised the limit to $4.5 million, and finally reduced the limit to $4.1 million.

Bank One describes these events differently. Bank One initially took the position that Oak Rubber actually paid less interest than required by the contract. Now, however, Bank One does not contest Oak Rubber's claim that it paid more interest than required under the 1993 loan agreement. Bank One has offered to pay Oak Rubber $20,943.57, the amount it calculated that Oak Rubber overpaid. Reacting to Bank One's offer, Oak Rubber says that it is entitled to $40,261.10.

Bank One says that it released its security interest in Oak Rubber's assets but acknowledges that it failed to modify some of its internal documents to reflect that fact. As a result, Bank One acknowledges that it did not file documents to show it had released the security interest and that it mistakenly filed the UCC continuation forms.

In addition, Bank One denies that it unilaterally reduced Oak Rubber's credit line. The defendant says that it made several offers to Oak Rubber but that Oak Rubber rejected the $3.5 million and $4.5 million credit line offers. However, Bank One says that Oak Rubber initially accepted a $4.3 million secured credit line with a

---

**1.** Oak Rubber says that this provision meant that it was not to pledge or otherwise encumber its assets in favor of another lender. Bank One says that this condition also required that Oak Rubber not sell any of its assets without first informing Bank One.

higher interest rate when it signed a commitment letter on June 17, 2000. Only later did Oak Rubber reject this new credit line. Bank One also disputes Oak Rubber's claim that it was never in default of the loan. Specifically, Bank One says that Oak Rubber sold one of its manufacturing facilities in violation of the negative asset pledge in the 1997 modification agreement.

Bank One says that it continued to work with Oak Rubber in an attempt to recover its outstanding debt, but eventually decided to demand repayment under the promissory note. On February 14, 2002, Bank One issued a demand letter to Oak Rubber requesting that all outstanding principal and interest be repaid. In this letter, Bank One stated that it had all the rights and remedies of a secured party even though Bank One had given up its security interest in Oak Rubber's assets.

On March 5, 2002, Bank One removed Oak Rubber's state court action to this Court. In that action, Oak Rubber makes a claim in Count I for damages resulting from unlawful tying under 12 U.S.C. § 1972(1)(C). Count II seeks injunctive relief from Bank One's attempt to collect the plaintiffs' loan under 12 U.S.C. § 1976. Count III alleges that the defendant's actions constitute fraud. In Count IV, Oak Rubber pursues a civil cause of action as a crime victim under Section 2307.60 of the Ohio Revised Code. Oak Rubber alleges, as required by state law, the federal crime of the use of extortionate means to collect a debt, 18 U.S.C. § 894(a), as a predicate to liability on this Count. In Count V, Oak Rubber alleges a breach of contract because Bank One unilaterally increased Oak Rubber's interest rate. Count VI alleges breach of contract and slander of title because Bank One failed to terminate the UCC financing statements previously filed to perfect an interest in Oak Rubber's assets. Count VII alleges Bank One breached its duty of good faith. Count VIII is a request for punitive damages. Count IX requests a declaratory judgment clarifying the rights of the parties under the 1997 modification agreement.

## III. *LEGAL STANDARD*

Summary judgment is appropriate where the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Waters v. City of Morristown,* 242 F.3d 353, 358 (6th Cir.2001). A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Once the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It is not sufficient for the non-moving party merely to show that there is some existence of doubt as to the material facts. *Id.*

In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *National Enters., Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir.1997). Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All–Lock Co.,* 96 F.3d 174, 178 (6th Cir.1996) (internal quotations omitted).

## IV. *ANALYSIS*

Both parties have moved for summary judgment. The Court discusses each of the plaintiffs' claims in turn.

### A. Anti–Tying Claim

■ The plaintiffs say Bank One violated the Bank Holding Company Act when it conditioned its forbearance on the promissory note on Oak Rubber obtaining a new credit line with a higher interest rate. Under the statute:

(1) A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the forgoing, on the condition or requirement—

. . . . .

(C) that the customer provide some additional credit, property, or service to such bank, other those related to and usually provided in connection with a loan, discount, deposit, or trust service.

12 U.S.C. § 1972(1)(C). To succeed on an anti-tying claim under 12 U.S.C. § 1972, a plaintiff must show: 1) an anticompetitive tying arrangement; 2) the banking practice at issue was unusual in the banking industry; and 3) the practice must benefit the bank. *Kenty v. Bank One, Columbus, N.A.,* 92 F.3d 384, 394 (6th Cir.1996). A "plaintiff only need demonstrate an anticompetitive practice or arrangement and need not show that it had any anticompetitive effect." *Id.*

Oak Rubber says that unlawful tying arrangement took place when Bank One allegedly said it would forbear calling in the existing loan only if Oak Rubber would enter in a new loan with a higher interest rate. Oak Rubber says that forbearing to collect an existing loan constitutes an "extension of credit" under the statute. *See Nordic Bank PLC v. Trend Group, Ltd.,* 619 F.Supp. 542, 554–55 (S.D.N.Y.1985).

Oak Rubber says the arrangement was anticompetitive because Bank One did not release its liens on Oak Rubber's assets. The plaintiffs say their encumbered assets inhibited their ability to get alternate financing, which in turn allowed Bank One to pressure them into a new and unfavorable loan agreement.

In addition, Oak Rubber says that Bank One's continuation of the liens on its assets, including filing the UCC continuation statements, and its raising of Oak Rubber's interest rate are unusual business practices. At a minimum, the plaintiffs say Bank One's actions demonstrate recklessness for the terms and conditions of the loan, which Oak Rubber says is itself an unusual business practice.

■ The Court disagrees. The plaintiffs make much of Bank One's actions being an anticompetitive tying agreement, but Oak Rubber does not present evidence showing how Bank One's actions were anticompetitive within the meaning of the statute. The purpose of the Bank Holding Company Act's tying provision is to prevent a bank from using its market power to dominate commerce by forcing businesses to provide or accept other, unrelated services, or to deal exclusively with one bank as a condition for extending credit. *See New England Co. v. Bank of Gwinnett County,* 891 F.Supp. 1569, 1573–74 (N.D.Ga.1995). While an unlawful tie can manifest in many ways, an actionable claim "is that the arrangement be designed to lessen competition or increase the economic power of the creditor bank." *Id.* at 1574 n. 1. To support its claim of an illegal tying arrangement, Oak Rubber must show:

that the practice complained of is anticompetitive, that the practice results in unfair competition or could lessen competition, and that the practice benefits the Bank in some way other than merely

allowing the Bank additional asset protection. *Palermo v. First National Bank & Trust Co.*, 894 F.2d 363, 368 (10th Cir.1990). In other words, tying arrangements that have no anti-competitive effect but are aimed at protecting the Bank's investment do not violate the BHCA. *Graue Mill Development Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 992 (7th Cir.1991).

*Id.* at 1576.

The Court finds persuasive the district court's reasoning in *New England Co.* In that case, the plaintiff had $500,000 credit line for a number of years with the defendant bank. Then, in spite of the fact that the loan was not in default, the bank refused to continue to extend credit under the original agreement. The bank refused to allow additional draws against the credit line, demanded changes in the way the plaintiff did business, demanded personal guarantees from the plaintiff's owners, and demanded a security interest in certain property.

The court found that the defendant's conduct did not violate the Bank Holding Company Act. *See id.* at 1575–76. That the plaintiff "had yet to miss a payment on its line of credit, and had not defaulted, does not instantly transform the Bank's effort to gain additional security before extending further credit into an unusual or anti-competitive banking practice." *Id.* at 1576.

Similarly, the plaintiffs' evidence fails to show how Bank One's attempt to renegotiate their loan agreement and issuance of the demand note lessened Oak Rubber's ability to seek alternate financing at comparable market rates. In fact, as early as 2001, Oak Rubber actively searched for alternative financing. The plaintiffs' evidence also does not show how Bank One's actions were meant increase its own economic power in a commercial field.

Additionally, activities within traditional banking practices do not violate the statute. *See Sanders v. First Nat'l Bank & Trust Co.*, 936 F.2d 273, 278 (6th Cir.1991); *New England Co.*, 891 F.Supp. at 1575; *Nordic Bank PLC v. Trend Group, Ltd.*, 619 F.Supp. 542, 556–57 (S.D.N.Y.1985). Banks commonly reevaluate their portfolios and request additional security. *See New England Co.*, 891 F.Supp. at 1575.

Oak Rubber does not present any evidence that Bank One's actions were unusual business practices. Bank One attempted to change the terms of its loan agreement with Oak Rubber. When those negotiations were unfruitful, Bank One sent a demand letter as allowed by the terms of the promissory note. The plaintiffs' claims that Bank One unilaterally raised the interest rate and intentionally failed to release its security interest in Oak Rubber's assets, even if true, do not give rise to a tying claim. At most, those allegations support a breach of contract claim that will be discussed in a later section. *See Kenty*, 92 F.3d 384 (6th Cir. 1996) (stating that "a valid breach of contract claim cannot be converted into an anti-tying claim").

Because Oak Rubber did not present evidence sufficient to create a material issue of fact with respect to its anti-tying claim, the Court grants the defendant's motion for summary judgment on this claim. Plaintiffs' Count I and II are dismissed. As a result, the Court denies the plaintiffs' motion for summary judgment on this claim.

### B. Use of Extortionate Means

■ Oak Rubber's allegations that Bank One employed extortionate means to collect an extension of credit fail as a matter of law. Under federal law, it is illegal for any person to knowingly participate in the use of extortionate means to collect or

attempt to collect any extension of credit. *See* 18 U.S.C. § 894. "Extortionate means" is any use or threat of use of violence or other criminal means to cause harm to the person, reputation, or property of any person. *See* 18 U.S.C. § 891(7). To have a claim under § 894(a), Oak Rubber must be able to show that Bank One used or threatened violence or any other criminal means to collect or attempt to collect the credit it extended to Oak Rubber.

Oak Rubber alleges that Bank One's failure to release its liens on Oak Rubber's assets and its issuance of a demand letter for repayment constitutes extortionate means to collect the credit Bank One extended to Oak Rubber.

The promissory note agreed to by both Bank One and Oak Rubber when the parties entered into the 1993 Lending Agreement stated that the principal and interest were due and payable on demand by Bank One. (Pls.' Mot. for Summ.J.Ex. N at 2). Bank One's demand for payment cannot be considered criminal. First, a demand to be repaid for money leant is inherently non-criminal and well within the lender's rights. And, second, Oak Rubber contractually agreed to the provision.

 Bank One retaining the liens on Oak Rubber's assets is also not criminal. Oak Rubber alleges that Bank One's actions "fit the textbook definition of theft." Assuming that Bank One both knowingly maintained the liens and was aware that it agreed to release such liens, Bank One's actions still do not constitute theft or even the threat of theft. To take control of the property that Bank One had liens on, Bank One would have been forced to seek a court order, a request that would have been certainly be denied. "A violation of Section 894 requires proof of the knowing use of extortionate means to collect, or attempt to collect, extensions of credit."

*Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York*, 808 F.Supp. 213, 232 (S.D.N.Y.1992). Even if the repayment obligations were incurred through extortion or fraud, the means of collecting the payment must be extortionate to be actionable under § 894. *See id.* The threat of going to court is not an extortionate means of collecting or attempting to collect extensions of credit. Congress drafted § 894 so that parties resolved their credit disputes through the courts instead of through violent or criminal threats or actions. While Oak Rubber says that particular means should be considered "extortionate" if they are reasonably likely to cause fear in an ordinary person, Bank One's actions do not even meet that standard. There is no actionable threat involved in having the judicial system resolve an issue. Threatening to have the courts decide an issue is not extortion.

Though not raised by Oak Rubber, Bank One's actions cannot even be reasonably construed as a threat of perjury because it cannot be assumed that Bank One would both bring action to take possession of the property subject to the invalid liens and would then commit perjury in court. *See Robert Suris Gen. Contractor Corp. v. New Metro. Fed. Savings & Loan Ass'n*, 873 F.2d 1401, 1405 (11th Cir.1989) (affirming summary judgment on an extortionate credit transaction claim because the record was devoid of any indication that the defendants threatened physical harm and that any threat of perjury was unfounded because it would rest on the dual speculation that the defendants would sue and then commit perjury in court). And, since Bank One's conduct alleged did not involve "anything akin to violent collection means, [it does not fall] within the ambit of the Extortionate Credit Transaction Act." *Id.*

Oak Rubber maintains that § 894 should be afforded a broad interpretation. Even pushed to its limits, § 894 does not support Oak Rubber's position that Bank One's actions were extortionate. Oak Rubber cites a myriad of § 894 cases involving violence and threats of violence that are not analogous to this matter.[2] The closest Oak Rubber comes to citing an analogous case is *Joseph v. Algemene Bank Nederland, N.V.,* 592 F.Supp. 141 (W.D.Pa.1984). In *Joseph,* the United States District Court for the Western District of Pennsylvania found that the plaintiffs had stated a valid § 894 claim by alleging that the defendants called in their loan to punish the plaintiffs for refusing to cede control of their corporation to another party. *See id.* at 145. *Joseph* is distinguishable from this case because, in *Joseph,* the defendants were trying to illegally squeeze the plaintiffs out of their business interest while, here, the demand by Bank One was solely to collect the debt owed to it by Oak Rubber.

Though Oak Rubber maintains otherwise, the legislative history of § 894 does not allow for an interpretation of the statute that criminalizes the use of invalid liens in the demand of repayment of debt. While § 894 was intended to have a liberal construction, the statute was not intended to make criminal nonviolent acts like those allegedly taken by Bank One. In the only discussion of "other criminal means" in the legislative history of § 894, Representative McDade stated:

> I want to make clear that the term "other criminal means" as used in this statute is intended by its authors to have a liberal construction in order that we

can take care of situations involving forcing other people to do criminal activity under threat of collection of debt. The use of force, express or implied, is not the sole test of an extortionate extension of credit. This is an important part of the statute.

*United States v. Pacione,* 738 F.2d 567, 571 (2d Cir.1984) (quoting 114 Cong.Rec. at 14391 (1968) (Conf.Rep. No. 1397, 90th Cong., 2d Sess.), *reprinted in* 1968 U.S.Code Cong. & Ad.News, 1962, 2029). Looking to the legislative history of § 894, the United States Court of Appeals for the Second Circuit held in *Pacione* that the term "other criminal means" was meant to supplement the statute so as mandate the punishment of people who forced their nonpaying debtors into committing crimes. *See id.* at 572. In *Pacione,* the Second Circuit held that activities including the preparing and threatening to record a deed and mortgage that recited false considerations were beyond the limits of § 894 because the defendant did not seek "extra legal methods to enforce his unconscionable agreement; on the contrary, he attempted to use the legal system, albeit with false documents." *Id.* The Second Circuit held that use of the legal system is not the type of activity that congress intended to make a federal crime. *See id.* The Court agrees with the Second Circuit's interpretation of § 894.

In this matter, Bank One did not force Oak Rubber to commit any crime. Bank One merely demanded repayment of the outstanding loans. Any reference to invalid liens were inconsequential because Bank One had *no* power to take possession of

---

**2.** *See United States v. Bonner,* 1988 WL 72644, at *1, 852 F.2d 569 (6th Cir.1988) (brandishing of a sawed-off shotgun and the arson of a home); *United States v. DiPasquale,* 740 F.2d 1282, 1285 (3d Cir.1984) (beatings with a fireplace poker and a pipe); *United States v.*

*Largent,* 545 F.2d 1039, 1042 (6th Cir.1976) (throwing Molotov cocktails and the firing of bullets into a living room); *United States v. Andrino,* 501 F.2d 1373, 1375 (9th Cir.1974) (attempting to run a driver off the road).

the land on which it purported to have a lien. At most Bank One threatened to use the legal system, albeit with false documents. As the court held in *Pacione*, such actions are not within the limits of § 894.

Oak Rubber has not presented sufficient evidence to create a material issue of fact regarding whether or not Bank One actions were extortionate. Therefore, the Court grants Bank One's motion for summary judgment on this claim. Oak Rubber's Count IV is dismissed. Accordingly, the Court denies Oak Rubber's motion for summary judgment on this claim.

### C. State law claims

#### 1. Fraud

■ The plaintiffs say Bank One fraudulently misrepresented its intent to convert Oak Rubber's loan to unsecured status in order to induce Oak Rubber to sign the 1997 modification agreement. To establish a claim of fraud under Ohio law, a plaintiff must prove the following elements:

(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Gaines v. Preterm–Cleveland, Inc.*, 33 Ohio St.3d 54, 55, 514 N.E.2d 709, 712 (1987). Ohio law holds that breaching a contract does not create a tort claim. *See Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 151, 684 N.E.2d 1261, 1270 (1996); *see also Canderm Pharmacal, Ltd. v. Elder Pharma-ceuticals, Inc.*, 862 F.2d 597, 602 (6th Cir. 1988). "The tort liability of parties to a contract arises from the breach of some positive legal duty imposed by the law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation." *Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 117 (6th Cir.1976).

■ The plaintiffs' fraud claim fails. In its complaint, Oak Rubber says that Bank One made misrepresentations to induce Oak Rubber to sign the 1997 modification agreement. The only "misrepresentations" Oak Rubber alleges are that Bank One filed UCC continuation forms on Oak Rubber's assets and that Bank One referred to itself as a secured creditor in the February 14, 2002, demand letter. The plaintiffs do not present any evidence that Bank One knew its promise in the 1997 modification agreement was false at the time it made the agreement. In addition, Oak Rubber's allegations describe Bank One's failure to honor the 1997 modification agreement, not the violation of some additional legal duty created by their relationship.

Therefore, the Court grants the defendant's motion for summary judgment on this claim. The plaintiffs' motion for summary judgment on this claim is denied.

#### 2. Breach of Contract from higher interest rates

In its opposition to the plaintiffs' motion for summary judgment on this claim, the defendant does not contest Oak Rubber's claim that it paid more interest than required by the 1993 loan agreement. However, the parties present conflicting evidence on the amount that Oak Rubber overpaid. Because this material issue of fact remains, summary judgment is inappropriate. Therefore, the Court denies both motions for summary judgment on this claim.

### 3. Breach of Contract and Slander of Title

In Count VI, the plaintiffs say that Bank One's failure to release its liens on Oak Rubber's assets constitute a breach of contract and slander of title. Because there is no dispute that Bank One filed UCC continuation forms and did not comply with the terms of the 1997 modification agreement, Oak Rubber says that there is no material issue of fact to be decided and it should be awarded summary judgment on its breach of contract claim.

The Court disagrees. Oak Rubber correctly states that no factual issue is in dispute. However, Oak Rubber has not presented any evidence showing that Bank One's breach of the 1997 modification agreement caused it damage. Damages are an essential element of a breach of contract claim. *Doner v. Snapp*, 98 Ohio App.3d 597, 600–01, 649 N.E.2d 42, 44 (1994) (affirming summary judgment on breach of contract claim where was no evidence of damages); *Anchor v. O'Toole*, 94 F.3d 1014, 1020 (6th Cir.1996). However, Oak Rubber makes no effort to describe or put forth any evidence to meet this element of its breach of contract claim. Oak Rubber's only mention of damages with respect to this claim are the costs and attorney fees incurred to litigate the slander of title claim. (Pls.' Mem. in Supp. of Summ.J. at 8, 11–12; Pls.' Br. in Opp'n to Mot. For Summ.J. at 20). Because Oak Rubber does not present any evidence on its breach of contract claim, the Court grants the defendant's motion for summary judgment on this issue. The Court denies the plaintiffs' motion for summary judgment on this issue.

On the other hand, there are material issues of fact that prevent summary judgment on Oak Rubber's slander of title claim. Slander of title is a tort action against one who falsely and maliciously defames the real or personal property of another. *Green v. Lemarr*, 139 Ohio App.3d 414, 430, 744 N.E.2d 212, 224 (2000). To succeed on a slander of title claim, a plaintiff must prove the following elements: 1) making a false defamatory statement against property of another; 2) the false statement was made maliciously; and 3) the statement caused actual or special damages. *See id.* at 430–31, 744 N.E.2d at 224; *Childers v. Commerce Mortgage Invs.*, 63 Ohio App.3d 389, 392, 579 N.E.2d 219, 221 (1989). An act is malicious if it is made with "reckless or wanton disregard of the rights of another." *Childers*, 63 Ohio App.3d at 392, 579 N.E.2d at 221.

Bank One acknowledges that it made a false statement on Oak Rubber's assets by filing the UCC continuation forms after it converted the plaintiffs' loan to unsecured status. Next, the plaintiff says Bank One acted maliciously when it continued the liens on Oak Rubber's assets because it knew, or should have known, that Bank One's internal problem credit reports written on February 22, 2000, and December 28, 2000, listed Oak Rubber's loan as unsecured. On September 25, 2000, Bank One filed a UCC continuation form to maintain its lien on Oak Rubber's assets. On April 30, 2001, Bank One authored a problem credit report on Oak Rubber that stated:

> Our files would indicate that we remain secured from earlier liens. Borrower is asserting that we released our collateral at an earlier date, however he can not produce any written evidence to that effect. In addition, our files lack any support for his assertions.

(Pls.' Mot. for Summ.J.Ex. K at 1).

In *Childers*, the plaintiffs took out a second mortgage on their home. The original lender took a security interest in the home but never disbursed the funds. The

lender then transferred the mortgage to a mortgage company. A management official knew the original lender had not disbursed the fund but recorded the mortgage anyway. When the homeowners found a buyer for their home and asked the mortgage company to release the second mortgage, the company refused. *Childers*, 63 Ohio App.3d at 391, 579 N.E.2d at 220–21.

The defendant says its actions were not malicious. Bank One says that the current situation is different from *Childers* because the conflicting reports were caused by a lack of communication between two departments that were located in different states, not a deliberate attempt to harm Oak Rubber. Bank One also says that the plaintiffs in *Childers* immediately brought the matter to the attention of the mortgage company. Bank One says that Oak Rubber took three and a half years from the signing of the 1997 modification agreement to bring the disputed security interest to its attention.

There is also a material issue of fact as to the special damages suffered by Oak Rubber. Under a slander of title claim, plaintiffs may only recover for special pecuniary loss. *Green*, 139 Ohio App.3d at 434–35, 744 N.E.2d at 227. That loss is either " '(a) the pecuniary loss that results directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement, [or] (b) the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement.' " *Childers*, 63 Ohio App.3d at 393, 579 N.E.2d at 222 (quoting Restatement (Second) of Torts § 633(1)(a) & (b) (1977)).

The plaintiffs say the liens on their assets that were supposed to be released in 1997 were only released in April 2002 because of the current litigation. Therefore, Oak Rubbers says it is entitled to recover the substantial costs it has expended protecting its rights. These are the only damages that Oak Rubber claims from this cause of action.

In response, Bank One says that there is no evidence that Oak Rubber was forced to file the current suit to get Bank One to release the security interest. Bank One says that Oak Rubber merely had to show it the 1997 modification agreement if it had wanted to have the security interest release.

Taking the evidence in the light most favorable to the non-moving party, the Court holds that the conflicting evidence presented by the parties on whether Bank One's actions were malicious is sufficient to defeat the opposing motions for summary judgment. While the parties have submitted very little evidence with respect to this claim, there is also a material issue of fact as to the reason Bank One finally released the liens on Oak Rubber's assets. Therefore, the Court denies both motions for summary judgment on Oak Rubber's slander of title claim.

### 4. Breach of an Implied Duty of Good Faith.

Oak Rubber alleges that the defendant breach its obligation, imposed by Ohio law, to act in "good faith in its performance or enforcement" of their agreement. Ohio Rev.Code § 1301.09. The plaintiffs say Bank One breached its obligation by threatening to enforce its rights as a secured creditor when it knew that it did not have a lawful security interest in Oak Rubber's assets. The plaintiffs also say that Bank One threatened to demand repayment under the promissory note unless Oak Rubber agreed to additional terms more favorable to Bank One.

■ To succeed on their claim, the plaintiffs must show that Bank One's alleged actions were "commercially unjustifiable." *Needham v. The Provident Bank,* 110 Ohio App.3d 817, 831, 675 N.E.2d 514, 523 (1996) (citing *Master Chemical Corp. v. Inkrott,* 55 Ohio St.3d 23, 28, 563 N.E.2d 26, 31 (1990)). The plaintiffs do not present evidence showing that Bank One breached its duty of good faith.

■ Ohio law is crystal clear that an actor does not act in "bad faith" when it decides to enforce its contractual rights. *See Ed Schory & Sons, Inc.,* 75 Ohio St.3d 433, 443–44, 662 N.E.2d 1074, 1082–83 (1996); *Needham v. The Provident Bank,* 110 Ohio App.3d 817, 831–32, 675 N.E.2d 514, 523 (1996); *Metropolitan Life Ins. Co. v. Triskett Illinois, Inc.,* 97 Ohio App.3d 228, 238, 646 N.E.2d 528, 534 (1994). A party may even enforce its contractual rights to the "great discomfort" of the other party without violating its duty of good faith. *See Salem v. Central Trust Co., N.A.,* 102 Ohio App.3d 672, 678, 657 N.E.2d 827, 832 (1995).

The plaintiffs are correct that Bank One filed UCC continuation forms on its assets and stated that it was a secured party in the February 14, 2002, demand letter. However, Bank One never sought to exercise the rights of a secured party. Furthermore, as discussed above, Bank One could not have successfully foreclosed on Oak Rubber's assets because, by its own admission, it had given up its security interest in Oak Rubber's assets under the 1997 modification agreement. Even in looking at the facts in the light most favorable to Oak Rubber, Bank One's actions do not demonstrate an attempt to take "opportunistic advantage" of Oak Rubber "in a way that could not have been contemplated at the time of drafting." *Bennco Liquidating Co. v. Ameritrust Co. Nat'l Assoc.,* 86 Ohio App.3d 646, 649, 621 N.E.2d 760, 761 (1993) (quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting,* 908 F.2d 1351, 1357 (7th Cir. 1990)).

The plaintiffs' claim also fails because Bank One had a contractual right to demand repayment of the loan. Initially, the plaintiffs say that the promissory note at issue in this case is not a demand note. They are mistaken.

■ Whether a contract term is ambiguous is determined by the Court. *See Weiss v. St. Paul Fire & Marine Ins. Co.,* 283 F.3d 790, 796 (6th Cir.2002). A term is ambiguous if it is reasonably susceptible of more than one meaning. *Id.* (citing *King v. Nationwide Ins. Co.,* 35 Ohio St.3d 208, 211, 519 N.E.2d 1380, 1383 (1988)). If the terms of the contract are unambiguous the court determines the meaning of the contract. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm,* 73 Ohio St.3d 107, 108, 652 N.E.2d 684, 686 (1995). The court is to give the terms of the contract their plain and natural meaning. *King,* 35 Ohio St.3d at 211, 519 N.E.2d at 1383.

The Court holds that there is nothing ambiguous about the repayment terms of the promissory note. The parties agreed that the promissory note would be payable on demand:

Principal and interest are immediately due and payable on demand but until such time as demand for payment is made, accrued interest thereon is due and payable as hereinafter provided:

Date of first interest payment: 01/01/94, and continuing monthly thereafter, until demand is made.

This note is issued in conjunction with an agreement or letter dated 12–23, 1993, to which reference is made, and is supported by other security documents.

(Pls.' Mot. for Summ.J.Ex. N at 1).

The promissory note goes on to say:

> If this Note is due and payable on demand it is subject to being called at any time upon actual demand by BANK ONE. The inclusion of a payment schedule is merely to provide terms for payment in the absence of actual demand and does not affect or impair BANK ONE's absolute right to demand payment of this Note at any time. Obligor agrees that BANK ONE may delay demand until, or make demand at anytime before, any payment date specified in the demand payment section of this Note.

(Pls.' Mot. for Summ.J.Ex. N. at 2). Bank One's February 14, 2002, demand letter did not breach its implied duty of good faith because it had the contractual right to make such a demand.[3]

Finally, Oak Rubber makes much of the fact that Bank One did not immediately demand repayment of the debt in 2000 when Oak Rubber and Bank One discussed altering the lending agreement. These discussions eventually led to Oak Rubber signing a commitment letter for a $4.3 million secured credit line with a higher interest rate. As was its right, Oak Rubber eventually rejected the new credit line. However, none of the evidence put forward by the plaintiffs supports their argument that Bank One's failure to immediately demand repayment in 2000 meant it was foreclosed from entering negotiations to change the terms of the original loan.

At the same time, the plaintiffs' evidence is not sufficient to create a material issue of fact that Bank One breached an implied duty of good faith. Even taking all of the allegations as true, the defendant stated an intent to exercise an explicit contractual right. Therefore, the Court grants the defendant's motion for summary judgment on the plaintiffs' claim for breach of the duty of good faith. The Court denies the plaintiffs' motion for summary judgment on this issue.

## V. CONCLUSION

For the reasons discussed above, the Court grants Bank One's motion for summary judgment on all of the plaintiffs' claims except for the breach of contract claim in Count V and the slander of title claim in Count VI. The Court denies the defendant's motion for summary judgment with respect to those claims. The Court denies the plaintiffs' motion for summary judgment.

IT IS SO ORDERED.

---

3. Oak Rubber says the reduction and termination of its credit line caused it damage because it was forced to sell its South Carolina plant and abandon its plans to relocate to Mexico. However, Oak Rubber presents almost no evidence to support its claims beside a few sentences in Murray Paul Collette's, the owner of Oak Rubber, affidavit. Even if the Court were to reach the element of damages in deciding Oak Rubber's breach of a duty of good faith claim, the evidence presented is quite speculative and would not be sufficient to survive a motion for summary judgment.