NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0954n.06
Filed: December 6, 2005

Nos. 04-4376/4377

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Specialty Minerals, Inc., et al., | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee / Cross-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| Dunbar Mechanical, Inc., | ) | |
| | ) | **O P I N I O N** |
| Defendant-Appellant / Cross-Appellee. | ) | |

BEFORE: MERRITT, MARTIN, and COLE, Circuit Judges

**R. GUY COLE, JR., Circuit Judge.** Defendant-Appellant and Cross-Appellee Dunbar Mechanical, Inc. ("Dunbar") appeals the district court's decision declaring invalid two affidavits Dunbar filed in support of mechanic's liens, the court's dismissal of Dunbar's counterclaim for judgment on bonds substituted for the liens per Ohio law, and the court's denial of Dunbar's motion to bifurcate the proceedings. Plaintiff-Appellee and Cross-Appellant Specialty Minerals, Inc. ("SMI") appeals the district court's dismissal of its claim for slander of title against Dunbar. For the reasons that follow, we **AFFIRM** the decisions of the district court.

I.

This case arises from the implementation of a two-stage process to manufacture polymers, developed by SMI, whereby material is pelletized and heated.

SMI contracted with Triad Construction Services, Inc. ("Triad") to install a pelletizing system in its Ohio plant ("contract 1"). Triad subcontracted with Dunbar ("subcontract 1A") to perform this service. SMI entered into a second contract with LB&W Engineering, Inc. ("LB&W") to install a kiln system ("contract 2"). LB&W subcontracted with Triad ("subcontract 2A") who subcontracted again with Dunbar ("subcontract 2B").

On December 14, 2000, SMI tested the pelletizing and kiln systems. Because of flaws in the SMI design, both systems had to be modified. SMI and LB&W bypassed a financially imperiled Triad and contracted directly with Dunbar to modify the two systems ("contracts 3 and 4"). SMI and LB&W paid Triad for the work on contracts 1 and 2. SMI and LB&W also substantially paid Dunbar for the work on contracts 3 and 4. Triad filed for bankruptcy, however, and failed to pay Dunbar a collective $240,904 on subcontracts 1A and 2B.

On March 22, 2001, Dunbar filed a pair of affidavits, thereby establishing two mechanic's liens against SMI's Ohio plant. SMI posted monetary bonds to remove the liens, pursuant to Ohio law. *See* O.R.C. § 1311.11(C). SMI brought this action requesting a declaratory judgment that Dunbar's affidavits were not filed within 75 days of the last day of work performed on the site, as required by O.R.C. § 1311.06(B)(3). Moreover, SMI brought a claim for slander of title to property. Dunbar moved to bifurcate the proceedings and filed a counterclaim requesting summary judgment on the bonds posted by SMI in lieu of the liens. Following a bench trial, the district court held on summary judgment that the affidavits were untimely; the court held against the moving party on each other claim. This appeal and cross-appeal followed.

SMI is a Delaware corporation that conducts business principally in New York. LB&W is a Pennsylvania corporation that conducts business principally in that state. Dunbar is an Ohio corporation that conducts business exclusively in Ohio; its owner is an Ohio resident. Thus, the district court had jurisdiction in this diversity case pursuant to 28 U.S.C. § 1332. 28 U.S.C. § 1291 in turn grants us jurisdiction to hear this timely set of appeals.

II.

A.       Dunbar's Motion to Bifurcate the Proceedings

Federal Rule of Civil Procedure 42(b) states: "The court, in furtherance of expedition and economy, may order a separate trial of any claim." In addition to speed and economy, the convenience of the parties and the avoidance of prejudice are important factors. *See In re Beverly Hill Fire Litig.*, 695 F.2d 207, 216 (6th Cir. 1982). We review the denial of a motion to bifurcate for abuse of discretion, *Yung v. Raymark Industries, Inc.*, 789 F.2d 397, 400 (6th Cir. 1986), which exists only upon a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Taylor v. U.S. Parole Comm'n*, 734 F.2d 1152, 1155 (6th Cir. 1984).

The district court did not abuse its discretion. Contracts 1 and 2 involve the same parties and arise out of the same project. The two mechanic's liens at issue attach to the same property. The court found that bifurcating the proceedings would not serve judicial economy, would have little effect on the convenience of the parties in such a short trial, and was unnecessary to avoid prejudice because there was no jury to confuse. In short, the court reasonably weighed the relevant factors. Accordingly, we affirm the district court's denial of Dunbar's motion to bifurcate.

B.      The Timeliness of Dunbar's Affidavits

Upon appeal from a bench trial, we review the district court's findings of fact for clear error and its findings of law *de novo*. *Pressman v. Franklin Nat'l Bank*, 384 F.3d 182, 185 (6th Cir. 2004). Although we give substantial deference to the district court's assessments of witness credibility, FED. R. CIV. P. 52(a), we review a district court's application of state law—which governs this diversity case—*de novo*. *Leavitt v. Jane L.*, 518 U.S. 137 (1996); *International Ins. Co. v. Stonewall Ins.* Co., 86 F.3d 601, 604 (6th Cir. 1996).

Under Ohio law, a contractor must file mechanic's lien affidavits within 75 days of the last day of work it performed on the contract at issue. O.R.C. § 1311.06(B)(3); *King, Gilbert & Warner v. Ship Bldg. Co.*, 34 N.E. 436, 439 (Ohio 1893). The last day of performance cannot be extended by "tacking together" labor performed on subsequent contracts. *King*, 34 N.E. at 439; *Talco Capital Corp. v. State Underground Parking Comm.,* 324 N.E.2d 762, 769 (Ohio Ct. App. 1974). Furthermore, unnecessary and unsolicited tinkering and repair do not extend the last day of performance. *Walter v. Brothers*, 181 N.E. 554, 555 (Ohio Ct. App. 1932); *Bohunek v. Smith*, 172 N.E. 852, 854 (Ohio Ct. App. 1930). "The true test is whether the alleged repairs are a necessary part of the proper completion and performance of the work which the lien claimant undertook to do." *Walter*, 181 N.E. at 553.

Dunbar filed its mechanic's lien affidavits on March 22, 2001, claiming to have performed meaningful work on contracts 1 and 2 as late as January of 2001. The district court determined that "any work performed after December 14, 2000, under contracts #1 and #2 was voluntary, gratuitous and without Plaintiff's knowledge." The court characterized the work Dunbar performed in

connection with contracts 1 and 2 in January of 2001 to be "trivial," i.e., unnecessary to the completion of the project.

The district court's factual findings are supported by the record. The district court credited the testimony of a Dunbar employee that the work conducted by Dunbar in January of 2001 was "odds and ends" and "not required to be complete to test the plant." Various witnesses also testified that Dunbar was not asked to perform additional work after December 31, 2000 and that most of work performed by Dunbar in January of 2001 related to contracts 3 and 4.

Dunbar argues that the district court's findings are incompatible with uncontested facts. Dunbar points to its request to work during the 2000 Christmas holiday season, which took place before contracts 3 and 4 were signed. Dunbar argues that this request, denied by SMI, is evidence that work remained on contracts 1 and 2. However, Dunbar's request to work over the holidays is wholly compatible with the district court's findings. The district court found that some work did remain on the first set of contracts: trivial odds and ends. Furthermore, the record reflects that although contracts 3 and 4 had not been signed, informal "punch lists" had been authored detailing the relevant work. Thus, the work Dunbar sought to perform over the holidays could have related to contracts 3 and 4, consistent with the district court's findings.

In short, the district court correctly identified and applied Ohio law. Accordingly, we affirm the district court's invalidation of Dunbar's affidavits as untimely; we correspondingly affirm the district court's summary judgment in favor of SMI, denying to Dunbar a judgment on the bonds.

C.     SMI's Claim of Slander of Title

The district court held that, although the supporting affidavits were untimely, Dunbar's mechanic's liens did not constitute slander of title under Ohio law because they were not filed maliciously.  As aforementioned, we defer to the district court's assessment of credibility but review its interpretations of state law *de novo*.  Malice, moreover, typically presents a question of law.  *See Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 492 (1984).

To prove slander of title in Ohio, a plaintiff must show that the defendant (1) made a defamatory statement against the property of another, (2) which was false and malicious, and (3) caused actual or special damages.  *Green v. Lamarr*, 744 N.E.2d 212, 224 (Ohio App. Ct. 2000).  A statement is malicious if made with "reckless or wanton disregard of the rights of another."  *Childers v. Commerce Mortgage Invs.*, 579 N.E.2d 219, 221 (Ohio App. Ct. 1989).

SMI asserts that a letter from Dunbar employee Skip Galbraith evidences Dunbar's malice.  In this letter, dated February 5, 2001, Galbraith states that Dunbar is "within three (3) weeks of instituting our legal rights under the Ohio Lien laws."  Galbraith testified that he was familiar with O.R.C. § 1311.06(B)(3)'s time requirements.  Furthermore, SMI points out that three weeks from February 5, 2001, is almost exactly 75 days from the day SMI tested the system.  According to SMI, this letter shows that Dunbar knew its affidavits, filed in March, were untimely.

Nevertheless, the district court did not find "reckless or wanton disregard" in Dunbar's act of filing the affidavits on March 22, 2001.  The court credited Galbraith's explanation of his letter at trial, namely, that Dunbar was within three weeks of *giving up its collection efforts* and exercising

its option under Ohio law to file a mechanic's lien. That the date coincided with SMI's test of the system was, according to the district court, a coincidence.

We affirm the district court for two reasons. First, we owe substantial deference to the credibility determination of the lower courts; the plaintiff is not entitled to a redetermination of credibility. *NLRB v. S. E. Nichols of Ohio, Inc.*, 472 F.2d 1228, 1229 (6th Cir. 1972) (per curiam) ("This court does not sit to retry disputed issues of fact or to redetermine issues of credibility of witnesses."). Thus, although our examination is *de novo*, we read Galbraith's letter with the assumption that his trial testimony is true.

Second, the facts do not easily support a claim for slander of title. "Generally, the claim arises because the presence of the affidavit or other filed documents prevents the titled owner from completing a proposed sale." *Green*, 744 N.E.2d at 224. Ohio's rule allowing property holders to post bonds in lieu of mechanic's liens, *see* O.R.C. § 1311.11(C), provides an easy mechanism to remove the cloud to title. Thus, the subject affidavits do not constitute "instrument[s] that cast doubt on the property's title and [do] not stand in the way of a record owner's 'full and free exercise of ownership." *Green*, 744 N.E.2d at 224 (quoting *Catawba West, Inc. v. Domo*, 598 N.E.2d 883, 885 (Ohio App. 1991).

III.

For the reasons articulated above, we **AFFIRM** the judgment of the district court in all respects.