[Cite as *Mulligan v. Campden Lakes Assn. Inc.*, 2012-Ohio-3121.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JAMES M. MULLIGAN, ET AL. | JUDGES:<br>Hon. Patricia A. Delaney, P.J. |
| Plaintiffs-Appellants | Hon. William B. Hoffman, J.<br>Hon. Sheila G. Farmer, J. |
| -vs- | |
| | Case No. 11CAE100095 |
| CAMPDEN LAKES ASSOCIATION INC. | |
| Defendant-Appellee | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Delaware County Court of
Common Pleas, Case No. 08 CVH 09 1261

JUDGMENT:    AFFIRMED

DATE OF JUDGMENT ENTRY:    June 27, 2012

APPEARANCES:

For Plaintiffs-Appellant    For Defendant-Appellee

JOHN M. GONZALES    HEATHER R. ZILKA
The Behal Law Group LLC    M. ANDREW SWAY
501 South High Street    Smith, Rolfes & Skavdahl Co., LPA
Columbus, Ohio 43215    65 East State Street, Suite 2000
Columbus, Ohio 43215

*Delaney, P.J.*

{¶1} Plaintiffs-appellants James M. Mulligan and Kathleen Mulligan appeal the September 21, 2011 Judgment Entry entered by the Delaware County Court of Common Pleas granting summary judgment in favor of Defendant-appellee Campden Lakes Association Inc.

## FACTS AND PROCEDURAL HISTORY

{¶2} Appellants James M. and Kathleen Mulligan own property commonly known as 4875 Aberdeen Avenue, Dublin, Ohio 43016, purchased on or about September 10, 2001. At the time Appellants purchased the property, the Campden Lakes Association Inc. had been formed through a Limited Warranty Deed. The Campden Lakes Association Inc. (hereinafter "Association") is a homeowner's association vested with the authority to enforce the Limited Warranty Deed in the Campden Lakes subdivision, in which Appellants' property is located.

{¶3} The Limited Warranty Deed authorizes the Association to levy assessments as necessary for the benefit of the homeowners association. Article I of the Limited Warranty Deed dated January 28, 1997 sets forth the following relevant definitions:

§1.01 Assessments: shall mean Base Assessments, Individual Assessments and Special Assessments.

§1.04 Base Assessment: shall mean those charges levied and collected by the Association from Owners of Lots to fund Common Expenses.

§1.08 Common Expenses: shall mean all expenses incurred by the Association in connection with its ownership and/or maintenance of the

Common Property, including but not limited to maintenance of the median strips, cul-de-sac open space, maintenance of the pump stations and lakes, maintenance of the property other than Common Property as provided herein, real estate taxes and assessments, if any, attributable to the Common Property, utilities for the Common Property and all other expenses of any kind incurred in connection with the performance affairs and general discharging the duties and obligations imposed upon it by the Protective Covenants or assumed by it pursuant to authorization granted by these Protective Covenants.

§1.24 Special Assessment: shall mean those charges levied and collected by the Association from Owners of Lots to fund extraordinary expenses which are not included in the Association's budget.

**{¶4}** The Limited Warranty Deed further sets forth the duties of the Association Board in Article II as follows:

§2.03 Authority to Maintain Surplus. The Association shall be obligated to spend in any particular year or time period all sums collected or received by it in such year or time period may carry forward, as surplus, any balances remaining without any obligation to apply such surplus against the budget for the current or next ensuing year.

§2.06 Base Assessments. The Board shall annually estimate the Common Expenses and other expenses, if any, it expects the Association to incur in the Association's next ensuing fiscal year (which may be a calendar year – as determined by the Board from time to time) for the

maintenance, operation and management of the Association, including the Common Property, and shall assess sufficient Bases Assessments (which may include amounts for a reasonable reserve fund- as may be determined by the Board) to meet this estimate. All Lots shall be assessed for the Base Assessments at a uniform rate. The Base Assessment for calendar year 1996 shall be Two Hundred Dollars ($200), provided that the Base Assessment for such year may be increased in order to pay for any real property taxes or assessments which may be payable to governmental authorities with respect to the Common Property.

§2.07 Special Assessment. In the event during the course of the fiscal year the Board should determine that the Base assessments are insufficient to meet an extraordinary expense not originally part of the Association's budget, the Board may levy a Special Assessment to cover such extraordinary expense. All Lots shall be assessed for Special Assessments at a uniform rate; provided, however, such rate may be prorated for any Lots which were not Lots for the entire calendar year. Notwithstanding anything to the contrary herein contained, it is recognized and declared that any Special Assessment shall be in addition to and not part of any Base Assessment, and any such Special Assessment assessed against Lots shall be paid by such Owners in addition to any Base Assessments. Special Assessments shall be paid in installments or in lump sum as the Board shall determine.

**{¶5}** According to a letter from Jim Scowden, the President of the Association, to Appellant James Mulligan dated March 25, 2007, at the Association's meeting in November, 2006, the Association voted to levy a "special assessment" in the amount of $200.00 to be "designated a Contingency Reserve." The letter further stated:

This reserve is to be used for unexpected expenses outside the base assessments annual budget. The Board has agreed that the irrigation system and pumps repair, the well pump and dam repair, any vandalizing of community property or seating area, replacing common property dead landscaping as well as other unforeseen emergencies would constitute a contingency expense.

Scowden's letter indicates the special assessment would sit in reserve, to be used for an unbudgeted expense at a later date.

**{¶6}** Appellants did not pay the special assessment; rather, instead sending a letter of explanation as to why they withheld the $200 levied for the special assessment. Appellants paid the 2007 base assessment.

**{¶7}** On July 12, 2007, Appellants received a letter by regular mail indicating a lien would be placed on their property if all assessments were not paid on or before August 7, 2007. On or about September 19, 2007, the Association filed a lien against Appellants' property.

**{¶8}** Appellants filed a complaint in the Delaware County Court of Common Pleas challenging assessments levied by the Association as a breach of contract, the Associations denial of their right to an accounting, and bringing an action for slander of title. The Association then moved for summary judgment on all counts. Via Judgment

Entry of September 21, 2011, the trial court granted summary judgment in favor of the Association, dismissing Appellants' complaint with prejudice.

## ASSIGNMENTS OF ERROR

{¶9}  Appellants now appeal, assigning as error:

{¶10}  "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN HOLDING THAT AN ATTEMPTED SALE OF LIENED PROPERTY IS A NECESSARY ELEMENT IN A SLANDER OF TITLE ACTION.

{¶11}  "II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN DETERMINING THAT THE $200 DESIGNATED AS THE 'CONTINGENCY RESERVE' WAS A 'SPECIAL ASSESSMENT' AS THAT TERM IS DEFINED UNDER THE CONTRACT DRAFTED BY THE DEFENDANT.

{¶12}  "III. THE TRIAL COURT ERRED AS A MATTER OF LAW IN DETERMINING THAT THE PROGRESSIVE ENFORCEMENT PROCESS WAS INVALID AND INAPPLICABLE TO ADDRESS ALLEGED VIOLATIONS OF THE LIMITED WARRANTY DEED.

{¶13}  "IV. BECAUSE THERE EXIST MATERIAL FACTS REGARDING WHETHER THE 'CONTINGENCY RESERVE' WAS A SPECIAL ASSESSMENT AS DEFINED BY THE LIMITED WARRANTY DEED, AND REGARDING THE PROGRESSIVE ENFORCEMENT PROCESS NOT BEING FOLLOWED, THE TRIAL COURT ERRED IN DETERMINING THAT THE MULLIGANS WERE NOT MEMBERS OF THE ASSOCIATION IN GOOD STANDING AND THEREFORE, NOT ENTITLED TO AN ACCOUNTING."

**ANALYSIS**

*STANDARD OF REVIEW*

{¶14} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36, 506 N.E.2d 212 (1987). As such, this Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

{¶15} Civ.R. 56 provides summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977).

{¶16} It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1987). The standard for granting summary judgment is delineated in *Dresher v. Burt*, 75 Ohio St.3d 280 at 293, 662 N.E.2d 264 (1996): " * * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden

under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ*, 37 Ohio St.2d 150, 309 N.E.2d 924 (1974).

*II.*

{¶17} As we find Appellants' second assignment of error impacts our determination of the remaining assignments of error, we will begin our analysis with that error.

{¶18} Appellants maintain the trial court erred in determining the $200 designated as the "Contingency Reserve" was a "Special Assessment" as defined under the terms of the Limited Warranty Deed and Restrictive Covenants drafted by the Association. We disagree.

{¶19} Appellants challenge through a breach of contract action the $200 assessment levied by the Association pursuant to the Limited Warranty Deed. The Limited Warranty Deed establishes the regulations by which the Association maintains the Campden Lakes subdivision.

{¶20} "Condominium declarations and bylaws are contracts between the association and the purchaser." *Acacia on the Green Condominium Assn., Inc. v. Gottlieb*, 8th Dist. No. 92145, 2009-Ohio-4878, ¶ 20 citing *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 35-36, 514 N.E.2d 702 (1987). As such, we review the provisions of the Limited Warranty Deed under the law of contracts. It is a fundamental principle in contract construction that contracts should "be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Skivolocki v. East Ohio Gas Company,* 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus. A reviewing court should give the contract's language its plain and ordinary meaning unless some other meaning is evidenced within the document. *Alexander v. Buckeye Pipe Line Company* (1978), 53 Ohio St.2d 241, 374 N.E.2d 146 (1978). If the terms of the contract are determined to be clear and unambiguous, the interpretation of the language is a question of law reviewed de novo on appeal. *State ex rel. Parsons v. Fleming,* 68 Ohio St.3d 509, 628 N.E.2d 1377 (1994). Under a de novo review, an appellate court may interpret the language of the contract substituting its interpretation for that of the trial court. *Children's Medical Center v. Ward,* 87 Ohio App.3d 504, 622 N.E.2d 692 (1993).

{¶21} The Association's Restrictive Covenants define "Special Assessment" as, "§1.24 Special Assessment: shall mean those charges levied and collected by the Association from Owners of Lots to fund extraordinary expenses which are not included in the Association's budget."

{¶22} "Special Assessments" are further discussed in the section of the Restrictive Covenants dealing with the duties of the Association's Board: "§2.07 Special

<u>Assessment</u>. In the event during the course of the fiscal year the Board should determine that the Base assessments are insufficient to meet an extraordinary expense not originally part of the Association's budget, the Board may levy a Special Assessment to cover such extraordinary expense."

**{¶23}** According to a letter from Jim Scowden, the President of the Association, to Appellant James Mulligan dated March 25, 2007, at the Association's meeting in November, 2006, the Association voted to levy a "special assessment" in the amount of $200.00 to be "designated a Contingency Reserve" to be used for "unexpected expenses outside the base assessments annual budget." Scowden's letter indicates the special assessment would sit in reserve, to be used for an unbudgeted expense at a later date.

**{¶24}** The Association's Restrictive Covenants contained in the Limited Warranty Deed contemplate a reserve fund in the Base Assessments, which are defined as:

**{¶25}** "§2.06 <u>Base Assessments</u>. The Board shall annually estimate the Common Expenses and other expenses *** for the maintenance, operation and management of the Association, including the Common Property, and shall assess sufficient Base Assessments (which may include amounts for a reasonable reserve fund - as may be determined by the Board) to meet this estimate."

**{¶26}** Appellants argue the language of the Limited Warranty Deed does not authorize the Association to levy a special assessment to create a "contingency reserve fund"; rather, the Association's authorizing documents contemplate any reserve fund should be created by a base assessment levied by the Association.

{¶27} Appellants are correct when they state there is no language in the Limited Warranty Deed to state that the Association may create a contingency reserve fund for special assessments similar to that specifically declared in §2.06 as to Base Assessments. §2.07 for special assessments permits the Board to levy a special assessment to cover extraordinary expenses if the Board determines the base assessments are insufficient to meet the extraordinary expenses not originally part of the Association's budget. If §2.07 is reviewed in the converse, however, there is no language in the Limited Warranty Deed that prohibits the Board from establishing a contingency reserve fund as to special assessments. The sole limiting factor as to special assessments is that the special assessment must cover extraordinary expenses if the Board determines the base assessments are insufficient to meet the extraordinary expenses not originally part of the Association's budget.

{¶28} The Civ.R. 56 evidence presented demonstrates that the 2007 special assessment was established to fund the irrigation system and pumps repair, the well pump and dam repair, any vandalizing of community property or seating area, and replacing common property dead landscaping as well as other unforeseen emergencies. (March 25, 2007 Jim Scowden letter.) Appellants have not presented any Civ.R. 56 evidence to create a genuine issue of material fact as to whether those items were extraordinary expenses or part of the Association's 2007 budget. Appellants conclude that those expenses should be part of the annual budget, not extraordinary expenses. The record shows Appellants did not appear for the homeowner's association meeting to vote as to those items and their categorization as extraordinary expenses.

{¶29} Pursuant to the clear and unambiguous terms of the Limited Warranty Deed, we find no breach of contract to assess the $200 special assessment in 2007 to create a contingency reserve fund to cover extraordinary expenses not within the 2007 annual budget.

{¶30}  Appellants' second assignment of error is overruled.

*III.*

{¶31} Appellants argue in their third assignment of error the trial court erred in determining the progressive enforcement policy of the Association was not applicable to a failure to pay an assessment.  We disagree.

{¶32} In 2004, the Board amended the Limited Warranty Deed to include a Progressive Enforcement Process to deal with violations of the Limited Warranty Deed and Design Guidelines.  The first step is a verbal warning outlining the violation and providing 30 days to resolve.  The second step is after 30 days of the verbal warning and no resolution, a written warning will be provided with 30 days for resolution.  The third step is after 30 days of the written warning, a second written warning will be sent by certified mail.  The fourth step is after seven days of the second written warning sent by certified mail, the Association may have a lien filed for the approximate cost of resolution of the violation.  (Progressive Enforcement Process, Appendix 3.)  Appellants argue the Association was required to follow the Progressive Enforcement Process for Appellants' failure to pay the special assessment instead of immediately filing an lien.

{¶33}  We again review the terms of the Limited Warranty Deed under the law of contracts.  A review of the Progressive Enforcement Process and the terms of the Limited Warranty Deed as to base and special assessments show there is no genuine

issue of material fact that the Progressive Enforcement Process is not applicable to delinquent assessments.

**{¶34}** The Limited Warranty Deed specifies the process by which the Association will enforce the non-payment of assessments:

§2.09 Personal Liability and Lien. Assessments which become due and payable by a Member at any time during his other period of membership shall be a personal obligation of such Member and, in addition shall be a charge upon the Lot or Lots owned by such Member, and the Association shall have a lien on such Lot or Lots to secure the payment of all such Assessments subject only to the lien on public authority for taxes and assessments and the lien of any first mortgage.

§6.04 Effect of Non-Payment of Assessment Liens. All notices of Assessment from the Association to the Owners of Lots shall designate when the Assessment is due and payable. If an Assessment is not paid on the date when due, it shall then become delinquent and shall bear interest * * *. The Assessments, together with interest thereon, and the cost of collection thereof, including attorneys fees, shall constitute both a personal, joint and several obligation of the Owner against whom they are assessed and a charge and continuing lien against the Lot they are attributable to. If any Assessments, or the installment thereof, shall not be paid within thirty (30) days after the due date, the Association may, at any time thereafter, accelerate the entire amount due for the balance of the

year for which the Assessments were made and declare the same immediately due and payable.

**{¶35}** The Progressive Enforcement Process states in the fourth step the Association will determine the "approximate cost of the resolution of the violation." The base and special assessments are a determined amount each year pursuant to the terms of the Limited Warranty Deed. *See* §1.02, 2.06, and 2.07 of the Limited Warranty Deed. The Limited Warranty Deed specifies the process for the enforcement of the failure to pay an assessment. The Progressive Enforcement Process amendment makes no note that it amends the enforcement policy for the non-payment of assessments.

**{¶36}** As such, we find that reasonable minds can only conclude the Progressive Enforcement Process is not applicable to the non-payment of an assessment.

**{¶37}** Appellants' third assignment of error is overruled.

*IV.*

**{¶38}** Appellants maintain the trial court erred in determining they were not members in good standing of the Association due to the nonpayment of the 2007 improperly assessed special assessment; therefore, not entitled to an accounting. We disagree.

**{¶39}** The Associations' Restrictive Covenants contained in the Limited Warranty Deed read:

§2.10 <u>Suspension of Membership Rights</u>. No member shall have any vested right, interest or privilege in or to the assets, functions, affairs or interests of the Association, or any right, interest or privilege which may be

transferrable, or which shall continue after his or her membership ceases, or while he or she is not in good standing. A Member shall be considered "not in good standing" during any period of time in which he or she is delinquent in the payment of any Assessments, or in violation of any provision of these Covenants, or any Rules and Regulations. While not in good standing, the Member shall not be entitled to vote or exercise any other right or privilege of a member of the Association, including use of the Common Property.

**{¶40}** Appellants paid the base assessment levied, but abstained from payment of the special assessment in 2007. Because we find the 2007 special assessment was properly levied, there is no genuine issue of material fact Appellants are delinquent as to the special assessment for 2007. §2.10 of the Limited Warranty Deed states that if a member is delinquent in the payment of an assessment, the member shall be considered not in good standing and cannot exercise any right or privilege of a member of the Association.

**{¶41}** Based on our decision on Appellants' second assignment of error, we overrule Appellants' fourth assignment of error.

*I.*

**{¶42}** In the first assignment of error, Appellants maintain the lien placed on their property was invalid; therefore, the Association slandered their title, thereby causing them to incur damages in the form of attorney fees. The trial court granted summary judgment in favor of the Association because Appellants had not proven damages.

**{¶43}** Pursuant to our decision in the second and third assignments of error, we find there was no error to grant summary judgment in favor of the Association on Appellants' claim for slander of title.  Our reasoning however is based on our determination that the lien in this case is valid.

**{¶44}** Appellants' first assignment of error is overruled.

### CONCLUSION

**{¶45}** Appellants' four assignments of error are overruled.

**{¶46}** The September 21, 2011 Judgment Entry of the Delaware County Court of Common Pleas affirmed.

By: Delaney, P.J.

and Farmer, J. concurring;

Hoffman, J. dissenting.


_____
HON. PATRICIA A. DELANEY


_____
HON. WILLIAM B. HOFFMAN


_____
HON. SHEILA G. FARMER

*Hoffman, J., dissenting.*

**{¶47}** I respectfully dissent from the majority opinion.

**{¶48}** I would reverse the second assignment of error to find the language of the Limited Warranty Deed does not authorize the Association to levy a special assessment to create a "contingency reserve fund." Rather, the Association's authorizing documents contemplate any reserve fund should be created by a base assessment levied by the Association. Accordingly, I would hold the 2007 Special Assessment was not a valid assessment and Appellants were justified in not paying the same.

**{¶49}** My conclusion on the second assignment of error would also result in a reversal in part of the fourth assignment of error. Appellants maintain the trial court erred in determining they were not members in good standing of the Association due to the nonpayment of the 2007 improperly assessed special assessment; therefore, not entitled to an accounting. As Appellants properly paid the base assessment levied, but abstained from payment of the special assessment, I would find Appellants were entitled to an accounting as to the base assessment funds until 2007. However, Appellants are not entitled to an accounting as to the special assessment in 2007 or as to any assessments thereafter as Appellants remain in arrears for their 2008 assessments.

**{¶50}** I would also sustain Appellants' first assignment of error as to slander of title. Slander of title is a tort action. To prevail, a claimant must prove there was a publication of a slanderous statement disparaging claimant's title; the statement was false; the statement was made with malice or made with reckless disregard for its

falsity; and the statement caused actual or special damages. *Green v. Lemarr*, (2000) 139 Ohio. App.3d 414.

**{¶51}** In *Childers v. Commerce Mtge. Investments*, 63 Ohio App.3d 389 (9th Dist. 1989), the Ninth District Court of Appeals held:

**{¶52}** "In an action for slander of title, the plaintiff may only recover for special pecuniary loss. 35 Ohio Jurisprudence 3d (1982) 590-591, Defamation and Privacy, Section 156.

**{¶53}** "Additionally, the defendant's false statement must be a '* * * substantial factor in bringing about the loss. * * *' Restatement of the Law 2d, Torts (1977) 352, Section 632.

**{¶54}** "The Restatement identifies 'recoverable pecuniary loss' as follows:

**{¶55}** "'(1) The pecuniary loss for which a publisher of injurious falsehood is subject to liability is restricted to

**{¶56}** "'(a) the pecuniary loss that results directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement, and

**{¶57}** "'(b) The expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement.

**{¶58}** "'(2) This pecuniary loss may be established by

**{¶59}** "'(a) proof of the conduct of specific persons, or

**{¶60}** "'(b) proof that the loss has resulted from the conduct of a number of persons whom it is impossible to identify." *Id.* at 355, Section 633.

**{¶61}** "We find that the rules for computation of damages set forth in the Restatement are appropriate. The Childerses are entitled to recover from CMI all pecuniary losses they suffered in which CMI's recording of the mortgage was a substantial factor in causing the loss."

**{¶62}** A party is not necessarily or presumptively adversely affected based solely upon the fundamental necessity of expending attorney fees to defend a lawsuit in general. *Wiltberger v. Davis* (1996), 110 Ohio App.3d 46 (1996). However, I would find incurring attorney fees to prosecute an action to remove the doubt cast upon the vendibility of Appellants' title constitutes recoverable pecuniary loss.

**{¶63}** Finally, I would find Appellants' third assignment of error to be moot based on my analysis of Appellants' first assignment of error.

_____
HON. WILLIAM B. HOFFMAN

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

JAMES M. MULLIGAN, ET AL.          :
                                   :
    Plaintiffs-Appellants          :
                                   :
-vs-                               :          JUDGMENT ENTRY
                                   :
CAMPDEN LAKES ASSOCIATION INC.     :
                                   :
    Defendant-Appellee             :          Case No. 11CAE100095


For the reasons stated in our accompanying Opinion, the September 21, 2011 Judgment Entry of the Delaware County Court of Common Pleas is affirmed.  Costs to Appellants.


                        _____
                        HON. PATRICIA A. DELANEY


                        _____
                        HON. WILLIAM B. HOFFMAN


                        _____
                        HON. SHEILA G. FARMER